James H.M. Sprayregen, P.C.
Jonathan S. Henes, P.C.
Christopher T. Greco
Anthony R. Grossi
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

- and -

Melissa N. Koss
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:      (415) 439-1400
Facsimile:      (415) 439-1500

*Proposed Counsel to the Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ANSWERS HOLDINGS, INC., *et al.*,[1] | ) | Case No. 17-10496 (SMB) |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

## JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION
## FOR ANSWERS HOLDINGS, INC. AND ITS DEBTOR AFFILIATES

THIS CHAPTER 11 PLAN IS BEING SOLICITED FOR ACCEPTANCE OR REJECTION IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1126.  THIS CHAPTER 11 PLAN WILL BE SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL FOLLOWING SOLICITATION AND THE DEBTORS' FILING FOR CHAPTER 11 BANKRUPTCY.

---

[1]   The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Answers Holdings, Inc. (4504); Answers Corporation (2855); Easy2 Technologies, Inc. (2839); ForeSee Results, Inc. (3125); ForeSee Session Replay, Inc. (2593); More Corn, LLC (6193); Multiply Media, LLC (8974); Redcan, LLC (7344); RSR Acquisition, LLC (2256); Upbolt, LLC (2839); and Webcollage Inc. (7771).  The location of Debtor Webcollage Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is:  11 Times Square, 11th Floor, New York, New York 10018.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................................1

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,**
      **GOVERNING LAW, AND OTHER REFERENCES**................................................................1
    1.1     Defined Terms ....................................................................................................................1
    1.2     Rules of Interpretation .....................................................................................................13
    1.3     Computation of Time .......................................................................................................13
    1.4     Governing Law .................................................................................................................13
    1.5     Reference to Monetary Figures .......................................................................................13
    1.6     Reference to the Debtors or the Reorganized Debtors ....................................................14
    1.7     Controlling Document ......................................................................................................14

**ARTICLE II ADMINISTRATIVE AND PRIORITY CLAIMS**................................................................14
    2.1     Administrative Claims ......................................................................................................14
    2.2     DIP Claims.......................................................................................................................14
    2.3     Professional Claims..........................................................................................................14
    2.4     Priority Tax Claims ..........................................................................................................15
    2.5     Statutory Fees...................................................................................................................15

**ARTICLE III CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS**...........15
    3.1     Classification of Claims and Interests .............................................................................15
    3.2     Treatment of Classes of Claims and Interests .................................................................16
    3.3     Special Provision Governing Unimpaired Claims ..........................................................19
    3.4     Elimination of Vacant Classes .........................................................................................19
    3.5     Voting Classes; Presumed Acceptance by Non-Voting Classes .....................................19
    3.6     Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .................19
    3.7     Intercompany Interests .....................................................................................................20

**ARTICLE IV PROVISIONS FOR IMPLEMENTATION OF THE PLAN**........................................................20
    4.1     General Settlement of Claims and Interests .....................................................................20
    4.2     Restructuring Transactions...............................................................................................20
    4.3     New Common Stock and Warrants ...................................................................................21
    4.4     Exit Credit Facilities ........................................................................................................21
    4.5     Exemption from Registration Requirements ...................................................................22
    4.6     Subordination...................................................................................................................22
    4.7     Vesting of Assets in the Reorganized Debtors ................................................................22
    4.8     Cancellation of Instruments, Certificates, and Other Documents ...................................23
    4.9     Corporate Action..............................................................................................................23
    4.10   Corporate Existence .........................................................................................................23
    4.11   Charter, Bylaws, and New Organizational Documents ...................................................24
    4.12   Effectuating Documents; Further Transactions................................................................24
    4.13   Section 1146(a) Exemption .............................................................................................24
    4.14   Directors and Officers .....................................................................................................25
    4.15   Employee Arrangements of the Reorganized Debtors .....................................................25
    4.16   Management Incentive Plan .............................................................................................25
    4.17   Preservation of Causes of Action ....................................................................................25
    4.18   Release of Avoidance Actions .........................................................................................26

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .......................26
    5.1     Assumption of Executory Contracts and Unexpired Leases ...........................................26
    5.2     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ...................26

TABLE OF CONTENTS (CONT'D)

**Page**

5.3    Rejection Damages Claims .................................................................................27
5.4    Indemnification ..................................................................................................27
5.5    Insurance Policies .............................................................................................28
5.6    Contracts and Leases After the Petition Date ..................................................28
5.7    Reservation of Rights .......................................................................................28
5.8    Nonoccurrence of Effective Date .....................................................................28

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS** ........................................**28**
6.1    Distributions on Account of Claims and Interests Allowed as of the Effective Date ...................28
6.2    Rights and Powers of the Distribution Agent ...................................................29
6.3    Special Rules for Distributions to Holders of Disputed Claims and Interests................................29
6.4    Delivery of Distributions ..................................................................................29
6.5    Claims Paid or Payable by Third Parties ..........................................................31
6.6    Setoffs ...............................................................................................................32
6.7    Allocation Between Principal and Accrued Interest .........................................32

**ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS**......................**32**
7.1    Proofs of Claim / Disputed Claims Process ......................................................32
7.2    Objections to Claims ........................................................................................33
7.3    No Distribution Pending Allowance .................................................................33
7.4    Distribution After Allowance ...........................................................................33
7.5    No Interest .........................................................................................................33
7.6    Disallowance of Claims ...................................................................................33

**ARTICLE VIII EFFECT OF CONFIRMATION OF THE PLAN** ....................................**33**
8.1    Discharge of Claims and Termination of Interests ...........................................33
8.2    Releases by the Debtors ....................................................................................34
8.3    Releases by Holders of Claims and Interests ...................................................34
8.4    Exculpation .......................................................................................................35
8.5    Injunction .........................................................................................................36
8.6    Protection Against Discriminatory Treatment .................................................36
8.7    Release of Liens ...............................................................................................36
8.8    Reimbursement or Contribution .......................................................................37
8.9    Recoupment ......................................................................................................37
8.10   Subordination Rights ........................................................................................37

**ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**......................**37**
9.1    Conditions Precedent to the Effective Date ......................................................37
9.2    Waiver of Conditions Precedent ......................................................................38
9.3    Effect of Non-Occurrence of Conditions to Consummation .............................39
9.4    Substantial Consummation ...............................................................................39

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**................**39**
10.1   Modification of Plan ........................................................................................39
10.2   Effect of Confirmation on Modifications .........................................................39
10.3   Revocation or Withdrawal of Plan ...................................................................39

**ARTICLE XI RETENTION OF JURISDICTION** ....................................................**40**

**ARTICLE XII MISCELLANEOUS PROVISIONS** ...................................................**41**
12.1   Immediate Binding Effect ................................................................................41
12.2   Additional Documents .....................................................................................41
12.3   Payment of Statutory Fees ...............................................................................41
12.4   Reservation of Rights .......................................................................................41

TABLE OF CONTENTS (CONT'D)

**Page**

| | | |
|---|---|---|
| 12.5 | Successors and Assigns | 42 |
| 12.6 | Service of Documents | 42 |
| 12.7 | Term of Injunctions or Stays | 43 |
| 12.8 | Entire Agreement | 43 |
| 12.9 | Plan Supplement | 43 |
| 12.10 | Non-Severability | 43 |
| 12.11 | Votes Solicited in Good Faith | 44 |
| 12.12 | Closing of Chapter 11 Cases | 44 |
| 12.13 | Waiver or Estoppel | 44 |

## INTRODUCTION

Each of Answers Holdings, Inc., Answers Corporation, Easy2 Technologies, Inc., ForeSee Results, Inc., ForeSee Session Replay, Inc., More Corn, LLC, Multiply Media, LLC, Redcan, LLC, RSR Acquisition, LLC, Upbolt, LLC and Webcollage Inc. jointly propose this chapter 11 plan of reorganization pursuant to section 1121(a) of the Bankruptcy Code. Although proposed jointly for administrative purposes, the Plan constitutes a separate plan for each of the foregoing entities and each of the foregoing entities is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the accompanying *Disclosure Statement for the Prepackaged Joint Chapter 11 Plan of Reorganization for Answers Holdings, Inc. and its Debtor Affiliates* for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of the Plan and the transactions contemplated thereby, and certain related matters.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

### 1.1    Defined Terms

1.    "*Ad Hoc First Lien Group*" means the ad hoc group of certain unaffiliated holders of First Lien Claims represented by Jones Day.

2.    "*Ad Hoc Second Lien Group*" means the ad hoc group of certain unaffiliated holders of Second Lien Claims represented by Akin Gump Strauss Hauer & Feld LLP.

3.    "*Additional L/Cs*" means letters of credit issued under the DIP Orders and the DIP L/C Agreement during the pendency of the Chapter 11 Cases that are cash collateralized with the proceeds of the DIP Facility or Cash Collateral (as defined in the DIP Orders).

4.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Claims; (c) the DIP Claims and the DIP Payments; and (d) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

5.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

6.    "*Allowed*" means, with reference to any Claim or Interest, (a) any Claim or Interest arising on or before the Effective Date (i) as to which no objection to allowance, priority, or secured status, and no request for estimation or other challenge, including pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed prior to the Effective Date, or (ii) as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (b) any Claim or Interest that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtors or Reorganized Debtors, (c) any Claim or Interest as to which the liability of the Debtors or Reorganized Debtors, as applicable, and the amount thereof are determined by a Final Order of a court of competent jurisdiction other than the Bankruptcy Court, or (d) any Claim or Interest expressly allowed hereunder; provided, however, that notwithstanding the foregoing, (x) unless expressly waived by the Plan, the Allowed amount of Claims or Interests shall be subject to and shall not exceed the limitations under or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the

Bankruptcy Code, to the extent applicable, and (y) the Reorganized Debtors shall retain all claims and defenses with respect to Allowed Claims that are Reinstated or otherwise Unimpaired pursuant to the Plan.

7.      "*Approved 363 Sale Adjustment*" has the meaning given to such term in the Restructuring Term Sheet, dated as of January 30, 2017, attached as **Exhibit A** to the Restructuring Support Agreement.

8.      "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other Claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code.

9.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as may be amended from time to time.

10.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York or such other court having jurisdiction over the Chapter 11 Cases.

11.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court.

12.     "*Business Day*" means any day, other than a Saturday, Sunday, or a legal holiday in New York, as defined in Bankruptcy Rule 9006(a).

13.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

14.     "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

15.     "*Certificate*" means any instrument evidencing a Claim or an Interest.

16.     "*Chapter 11 Cases*" means the procedurally consolidated chapter 11 cases filed or to be filed (as applicable) for the Debtors in the Bankruptcy Court.

17.     "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

18.     "*Class*" means a category of holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

19.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

20.     "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

21.     "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court under section 1128 of the Bankruptcy Code at which the Debtors seek entry of the Confirmation Order.

22.     "*Confirmation Order*" means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement and Solicitation Materials, which order shall be in form and substance reasonably acceptable to the Debtors, the Consenting First Lien Secured Parties, the Required Second Lien Lenders, and the Sponsor Entities (pursuant to the Sponsor Entities Consent Right (as defined in the Restructuring Support Agreement), to the extent applicable).

23.     "*Consenting First Lien Lenders*" means, collectively, the First Lien Lenders that are parties to the Restructuring Support Agreement and are each designated as a "Consenting First Lien Lender" thereunder.

24.     "*Consenting First Lien Secured Parties*" means, collectively, the Consenting First Lien Lenders and the First Lien Agent.

25.     "*Consenting Second Lien Lenders*" means, collectively, the Second Lien Lenders that are party to the Restructuring Support Agreement and are each designated as a "Consenting Second Lien Lender" thereunder.

26.     "*Consenting Second Lien Secured Parties*" means, collectively, the Consenting Second Lien Lenders and the Second Lien Agent.

27.     "*Consenting Sponsor Lenders*" means, collectively, the Affiliated Debt Funds and Non-Debt Fund Affiliates (each as defined in the First Lien Credit Agreement) that are holders of First Lien Claims and/or Second Lien Claims, are parties to the Restructuring Support Agreement and are each designated as a "Consenting Sponsor Lender" thereunder.

28.     "*Consenting Sponsors*" means Clarity Holdco, L.P., a Delaware limited partnership, and Clarity GP, LLC, a Delaware limited liability company, in each case, solely in their respective capacities as holder of direct and indirect existing Interests in the Debtors.

29.     "*Consummation*" means the occurrence of the Effective Date.

30.     "*Converted DIP Loans*" means the outstanding DIP Loans (inclusive of any Converted L/Cs that have been drawn on or before the Effective Date or proceeds of the DIP Facility drawn to cash collateralize the Additional L/Cs) that shall be converted into First Lien Exit Loans on the Effective Date.

31.     "*Converted L/Cs*" means any issued and outstanding letter of credit obligations, including related fees, under the First Lien Loan Documents as of the Petition Date that upon entry of the DIP Orders shall be converted to letter of credit obligations issued and outstanding under the DIP Facility and incremental to the DIP Loans.

32.     "*Cure*" or "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

33.     "*D&O Liability Insurance Policies*" means all unexpired directors', managers', and officers' liability insurance policies (including any "tail policy") of any of the Debtors with respect to directors, managers, officers, and employees of the Debtors.

34.     "*Debtor Release*" means the releases set forth in <u>Section 8.2</u> of the Plan.

35.     "*Debtors*" means, collectively, each of the following:  Answers Holdings, Inc.; Answers Corporation; Easy2 Technologies, Inc.; ForeSee Results, Inc.; ForeSee Session Replay, Inc.; More Corn, LLC; Multiply Media, LLC; Redcan, LLC; RSR Acquisition, LLC; Upbolt, LLC; and Webcollage Inc.

36.     "*Definitive Documents*" means (a) the Plan, (b) the Plan Supplement, (c) the Confirmation Order, (d) the Disclosure Statement, (e) the Solicitation Materials, (f) the DIP Orders, (g) the DIP Loan Documents, (h) the

DIP L/C Facility Documents, (i) the Exit Credit Facilities Documents, (j) the New Stockholders' Agreement, (k) the New Organizational Documents; and (l) the Warrant Agreement.

37.    "*DIP Administrative Agent*" means Credit Suisse AG, Cayman Islands Branch in its capacity as administrative agent and collateral agent under the DIP Facility, or its successor thereunder.

38.    "*DIP Claims*" means any and all Claims held by any of the DIP Lenders, the DIP Administrative Agent, or the DIP L/C Issuer arising under or related to the DIP Loan Documents, the DIP L/C Facility Documents, or the DIP Orders (including on account of any Converted L/Cs that have been drawn on or before the Effective Date, or proceeds of the DIP Facility drawn to cash collateralize the Additional L/Cs), including Claims for payment of the DIP Payments.

39.    "*DIP Credit Agreement*" means that certain senior secured debtor-in-possession credit agreement, dated as of [___], 2017, as amended, restated, modified, supplemented, or replaced from time to time in accordance with its terms, by and among the Debtors, the DIP Lenders, and the DIP Administrative Agent.

40.    "*DIP L/C Agreement*" means that certain senior secured super priority debtor-in-possession letter of credit reimbursement and security agreement, dated as of [___], 2017, as amended, restated, modified, supplemented, or replaced from time to time in accordance with its terms, by and among the Debtors and the DIP L/C Issuer.

41.    "*DIP L/C Facility*" means that certain $2 million debtor-in-possession letter of credit facility provided by the DIP L/C Issuer on the terms of, and subject to the conditions set forth in, the DIP L/C Agreement.

42.    "*DIP L/C Facility Documents*" means the DIP L/C Agreement and any amendments, modifications, supplements thereto, as well as any related notes, certificates, agreements, security agreements, documents and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection with the DIP Credit Agreement.

43.    "*DIP L/C Issuer*" means Credit Suisse AG, Cayman Islands Branch, or any successor thereto, as L/C Issuer under the DIP L/C Reimbursement and Security Agreement or any other issuer of letters of credit to the Debtors that are cash collateralized by proceeds of the DIP Loans.

44.    "*DIP Loan Documents*" means the DIP Credit Agreement and any amendments, modifications, supplements thereto, as well as any related notes, certificates, agreements, security agreements, documents and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection with the DIP Credit Agreement.

45.    "*DIP Facility*" means that certain $25 million debtor-in-possession financing facility provided by the DIP Lenders on the terms of, and subject to the conditions set forth in, the DIP Credit Agreement.

46.    "*DIP Lenders*" means, collectively, the lenders under the DIP Facility, solely in their capacity as such.

47.    "*DIP Loans*" means amounts loaned by the DIP Lenders pursuant to the DIP Credit Agreement.

48.    "*DIP Orders*" means, collectively, the interim and final orders entered by the Bankruptcy Court authorizing the Debtors to enter into the DIP Credit Agreement and access the DIP Facility and the DIP L/C Facility.

49.    "*DIP Payments*" means any and all Claims held by any of the DIP Lenders, the DIP Administrative Agent, or the DIP L/C Issuer arising under or related to the DIP Loan Documents, the DIP L/C Facility Documents, or the DIP Orders comprising any fees, expenses, and other payments (other than payments due for principal of, or interest on, the DIP Loans) payable thereunder.

50.     "*Disclosure Statement*" means the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization for Answers Holdings, Inc. and its Debtor Affiliates*, as the same may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto, to be approved by the Confirmation Order.

51.     "*Disputed*" means, with respect to a Claim, (a) any such Claim to the extent neither Allowed or Disallowed under the Plan or a Final Order nor deemed Allowed under section 502, 503, or 1111 of the Bankruptcy Code, or (b) to the extent the Debtors or any party in interest has interposed a timely objection before the Confirmation Date in accordance with the Plan, which objection has not been withdrawn or determined by a Final Order.  To the extent the Debtors dispute only the Allowed amount of a Claim, such Claim shall be deemed Allowed in the amount the Debtors do not dispute, if any, and Disputed as to the balance of such Claims.

52.     "*DTC*" means The Depositary Trust Company, its nominee, Cede & Co., or any Affiliate thereof.

53.     "*Distribution Agent*" means, as applicable, the Reorganized Debtors or any Entity the Reorganized Debtors select to make or to facilitate distributions in accordance with the Plan.

54.     "*Distribution Date*" means, except as otherwise set forth herein, the date or dates determined by the Debtors or the Reorganized Debtors, on or after the Effective Date, upon which the Distribution Agent shall make distributions to holders of Allowed Claims entitled to receive distributions under the Plan.

55.     "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Section 9.1 of the Plan have been satisfied or waived in accordance with Section 9.2 of the Plan.

56.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

57.     "*Estate*" means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

58.     "*Exculpated Parties*" means each of the following, solely in its capacity as such: (i)(a) the Debtors; (b) the Reorganized Debtors, and (c) with respect to each of the forgoing parties in clauses (i)(a) and (i)(b), each of such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and (ii)(a) the Consenting First Lien Lenders; (b) the First Lien Agent; (c) the Ad Hoc First Lien Group; (d) the DIP Lenders; (e) the DIP Administrative Agent; (f) the Consenting Second Lien Lenders; (g) the Second Lien Agent; (h) the Ad Hoc Second Lien Group; (i) the Sponsor Entities; and (j) with respect to each of the forgoing parties in clauses (ii)(a) through (ii)(i), each of such Entity's current and former Affiliates, and each such entity's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

59.     "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

60.     "*Exit Commitment Equity*" means an amount of New Common Stock equal in value to 3% of the amount of the First Lien Exit Facility, which shall be payable on the Effective Date and calculated after the

distribution of New Common Stock to holders of First Lien Claims and Second Lien Claims on account of such applicable Claims.

61.    "*Exit Credit Agreements*" means, collectively, the First Lien Exit Credit Agreement and the Second Lien Exit Credit Agreement.

62.    "*Exit Credit Facilities Administrative Agent*" means Credit Suisse AG, Cayman Islands Branch, or any successor thereto, as administrative agent and collateral agent under the Exit Credit Facilities.

63.    "*Exit Credit Facilities*" means, collectively, the First Lien Exit Facility, the Second Lien Exit Facility, and the Exit L/C Facility.

64.    "*Exit Credit Facilities Documents*" means, collectively, the First Lien Exit Facility Documents, the Second Lien Exit Facility Documents, the Exit Credit Facilities Intercreditor Agreement, and the Exit L/C Facility Documents.

65.    "*Exit Credit Facilities Term Sheet*" means the term sheet attached to the Restructuring Support Agreement as <u>Exhibit C</u> setting forth the material terms and conditions of the Exit Credit Facilities.

66.    "*Exit Credit Facilities Intercreditor Agreement*" means the intercreditor agreement by and among the agent under the First Lien Exit Facility, as senior priority representative, and the agent under the Second Lien Exit Facility, as second priority representative, and acknowledged and agreed to by the Reorganized Debtors.

67.    "*Exit L/C Facility*" means the letter of credit facility consisting of any Converted L/Cs that remain undrawn on the Effective Date (if any) which will be incremental to the amounts outstanding under the Exit Credit Facilities.

68.    "*Exit L/C Facility Documents*" means the agreements and related documents governing the Exit L/C Facility to be entered into by the Reorganized Debtors on terms consistent with those set forth in the Exit Credit Facilities Term Sheet, in each case in form and substance reasonably acceptable to the Exit L/C Issuer.

69.    "*Exit L/C Issuer*" means Credit Suisse AG, Cayman Islands Branch, or any successor thereto, as L/C Issuer under the Exit L/C Facility and/or the First Lien Exit Facility, as the context may require.

70.    "*Federal Judgment Rate*" means the federal judgment rate in effect pursuant to 28 U.S.C. § 1961 as of the Petition Date, compounded annually.

71.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Solicitation Agent.

72.    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

73.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

74.    "*First Lien Agent*" means Credit Suisse AG, Cayman Islands Branch, or any successor thereto, as administrative agent and collateral agent under the First Lien Credit Agreement, in its capacity as such.

75.    "*First Lien Claims*" means all Claims against the Debtors arising under the First Lien Loan Documents; <u>provided</u>, <u>however</u>, that the First Lien Claims shall not include any Converted L/Cs.

76.    "*First Lien Credit Agreement*" means that certain Credit Agreement, dated as of October 3, 2014, among the Debtors, the First Lien Agent, and the First Lien Lenders.

77.    "*First Lien Exit Credit Agreement*" means the credit agreement evidencing the First Lien Exit Facility.

78.    "*First Lien Exit Facility*" means the new first lien term loan facility, consisting of the Converted DIP Loans, to be entered into by the Reorganized Debtors on the terms consistent with those set forth in the Exit Credit Facilities Term Sheet.

79.    "*First Lien Exit Facility Documents*" means the First Lien Exit Credit Agreement and any guarantee, security agreement, deed of trust, mortgage, and other relevant documentation entered into with respect to the First Lien Exit Facility.

80.    "*First Lien Exit Loans*" means the loans that shall be deemed on the Effective Date to be outstanding under the First Lien Exit Credit Agreement.

81.    "*First Lien Lenders*" means the lenders party to the First Lien Credit Agreement, in their capacities as such.

82.    "*First Lien Loan Documents*" means, collectively, the First Lien Credit Agreement, and any security documents, including the Prepetition Intercreditor Agreement, the letter of credit documentation, and any other collateral and ancillary documents, including any applicable forbearance agreement, executed in connection with the First Lien Credit Agreement.

83.    "*First Lien Secured Parties*" means, collectively, the First Lien Lenders and First Lien Agent.

84.    "*General Unsecured Claim*" means any Claim other than a DIP Claim, a First Lien Claim, a Second Lien Claim, an Administrative Claim, a Professional Claim, a Priority Tax Claim, an Other Secured Claim, an Intercompany Claim, or an Other Priority Claim.

85.    "*General Unsecured Creditor*" means the holder of a General Unsecured Claim.

86.    "*Governance Term Sheet*" means the term sheet, attached as **Exhibit H** to the Disclosure Statement, setting forth the material terms and conditions of the New Organizational Documents and the New Stockholders' Agreement.

87.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

88.    "*Holdings*" means Answers Holdings, Inc., a Delaware corporation, the ultimate parent of each of the Debtors.

89.    "*Impaired*" means, with respect to any Class of Claims or Interests, a Claim or an Interest that is not Unimpaired.

90.    "*Indemnification Provisions*" means each of the Debtors' indemnification provisions in place whether in the Debtors' bylaws, certificates of incorporation, other formation documents, board resolutions, management or indemnification agreements, employment contracts, or otherwise, for the current and former directors, officers, managers, employees, attorneys, other professionals, and agents of the Debtors and such current and former directors', officers', and managers' respective Affiliates.

91.    "*Insider*" has the meaning set forth in section 101(31) of the Bankruptcy Code.

92.    "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor or Non-Debtor Subsidiary.

93.     "*Intercompany Interest*" means, other than an Interest in Holdings, an Interest in one Debtor or Non-Debtor Subsidiary held by another Debtor.

94.     "*Interests*" means the common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor and options, warrants, rights, or other securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement), including any claim against the Debtors subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

95.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

96.     "*Management Incentive Plan*" means a post-Effective Date management incentive plan, the material terms of which shall be consistent with Section 4.16 of the Plan.

97.     "*MIP Equity*" means any New Common Stock that may be issued pursuant to the Management Incentive Plan, to the extent provided for thereunder, which shall dilute all New Common Stock equally.

98.     "*New Board*" means Reorganized Holdings' initial board of directors as of the Effective Date.

99.     "*New Common Stock*" means the common stock of Reorganized Holdings.

100.    "*New OpCo Boards*" means the new board of directors, or similar governing body, of each respective OpCo.

101.    "*New Organizational Documents*" means the form of the certificates or articles of incorporation, bylaws, or such other applicable formation documents of each of the Reorganized Debtors, which shall be consistent in all material respects with the Governance Term Sheet, including the New Stockholders' Agreement.

102.    "*New Stockholders' Agreement*" means that certain shareholders' agreement, in substantially the form to be Filed as part of the Plan Supplement, effective as of the Effective Date, to which all parties receiving New Common Stock (and all persons to whom such parties may sell or transfer their New Common Stock in the future and all persons who purchase or acquire the New Common Stock from Reorganized Holdings in future transactions) shall be required to become or shall be deemed parties, which shall be consistent in all material respects with the Governance Term Sheet.

103.    "*Non-Debtor Subsidiaries*" means all of Holdings' wholly owned subsidiaries who are not Debtors in these Chapter 11 Cases.

104.    "*OpCo*" means each of the respective entities under which (a) the Multiply business, (b) the ForeSee business, and (c) the Webcollage business are respectively situated in the Reorganized Debtors corporate organizational structure.

105.    "*OpCo MIP Equity*" means equity interests in any of the OpCos that may be issued pursuant to the Management Incentive Plan, to the extent provided for thereunder.

106.    "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

107.    "*Other Secured Claim*" means any Secured Claim other than the following:  (a) a First Lien Claim; (b) a Second Lien Claim; or (c) a DIP Claim.  For the avoidance of doubt, a Secured Tax Claim constitutes an Other Secured Claim.

108.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

109.    "*Petition Date*" means the date on which each of the Debtors filed its respective petition for relief commencing the Chapter 11 Cases.

110.    "*Plan*" means this joint prepackaged chapter 11 plan, including all appendices, exhibits, schedules and supplements hereto (including any appendices, exhibits, schedules and supplements to the Plan that are contained in the Plan Supplement), as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and the Restructuring Support Agreement, subject to the RSA Definitive Document Requirements.

111.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, the Bankruptcy Rules, and the Restructuring Support Agreement), to be Filed by the Debtors no later than 7 days before the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents or amendments to previously Filed documents, Filed before the Effective Date as amendments to the Plan Supplement, including the following, as applicable:  (a) the Exit Credit Agreements; (b) the New Organizational Documents; (c) a list of retained Causes of Action; (d) the New Stockholders' Agreement; (e) a disclosure of the members of the New Board and the New OpCo Boards; (f) the Warrant Agreement; (g) the Schedule of Rejected Executory Contracts and Unexpired Leases; and (h) the Restructuring Transactions Exhibit.  The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date consistent with the Restructuring Support Agreement.

112.    "*Prepetition Collateral*" means the collateral securing the First Lien Claims and Second Lien Claims pursuant to the Prepetition Loan Documents.

113.    "*Prepetition Intercreditor Agreement*" means that certain Intercreditor Agreement, dated as of October 3, 2014, by and among the First Lien Agent, as senior priority representative, and the Second Lien Agent, as second priority representative, and acknowledged and agreed to by the Debtors.  The Prepetition Intercreditor Agreement shall be construed to be part of the First Lien Loan Documents and the Second Lien Loan Documents.

114.    "*Prepetition Loan Documents*" means, collectively, the First Lien Loan Documents and the Second Lien Loan Documents.

115.    "*Prepetition Secured Parties*" means, collectively, the First Lien Agent, the First Lien Lenders, the Second Lien Agent and the Second Lien Lenders.

116.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

117.    "*Pro Rata*" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that respective Class, or the proportion that Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Allowed interests under the Plan.

118.    "*Professional*" means an Entity:  (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to (i) sections 327, 328, 329, 330, or 331 of the Bankruptcy Code or (ii) an order entered by the Bankruptcy Court authorizing such retention, or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

119.    "*Professional Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.

120.    "*Professional Fee Amount*" means the aggregate amount of Professional Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Section 2.3 of the Plan.

121.    "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Amount as set forth in Section 2.3 of the Plan.

122.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

123.    "*Reinstate," "Reinstated,"* or "*Reinstatement*" means, leaving a Claim Unimpaired under the Plan.

124.    "*Released Parties*" means each of the following, solely in its capacity as such: (i)(a) the Debtors; (b) the Reorganized Debtors, and (c) with respect to each of the forgoing parties in clauses (i)(a) and (i)(b), each of such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, and each of their respective current and former officers, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; and (ii)(a) the Consenting First Lien Lenders; (b) the First Lien Agent; (c) the Ad Hoc First Lien Group; (d) the DIP Lenders; (e) the DIP Administrative Agent; (f) the Consenting Second Lien Lenders; (g) the Second Lien Agent; (h) the Ad Hoc Second Lien Group; (i) the Sponsor Entities; and (j) with respect to each of the forgoing parties in clauses (ii)(a) through (ii)(i), each of such Entity's current and former Affiliates, and each such entity's and its current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their current and former officers, managers, directors, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, managed accounts or funds, management companies, fund advisors, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; provided, however, that any holder of a Claim or Interest that opts out of the releases contained in, or otherwise objects to, the Plan shall not be a "Released Party."

125.    "*Releasing Parties*" means collectively, and in each case solely in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Consenting First Lien Lenders; (d) the First Lien Agent; (e) the Ad Hoc First Lien Group; (f) the DIP Lenders; (g) the DIP Administrative Agent; (h) the Consenting Second Lien Lenders; (i) the Second Lien Agent; (j) the Ad Hoc Second Lien Group; (k) the Sponsor Entities; (l) all holders of Claims and Interests that are deemed to accept the Plan; (m) all holders of Claims who either (1) vote to accept or (2) receive a ballot but abstain from voting on the Plan; (n) all holders of Claims entitled to vote who vote to reject the Plan that do not elect on their Ballot to opt-out of the Third-Party Release; (o) all other holders of Claims and Interests to the extent permitted by law; and (p) with respect to the foregoing clauses (a) through (o), each such Entity and its current and former Affiliates, and each such entity's and its their current and former Affiliates' current and former directors, managers, officers, principals, members, employees, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, subsidiaries, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; provided, however, that the foregoing clauses (a) through (p) shall be subject, in all material respects, to the terms of the Restructuring Support Agreement.

126.    "*Reorganized Debtor*" means a Debtor, or any successor or assign thereto, by merger, consolidation, or otherwise, on and after the Effective Date.

127.    "*Reorganized Holdings*" means Holdings, or any successor or assignee thereto, by merger, consolidation, or otherwise, on and after the Effective Date.

128.    "*Required First Lien Lenders*" means the Consenting First Lien Lenders who hold, in the aggregate, at least 66.67% in principal amount outstanding of all First Lien Claims held by the Consenting First Lien Lenders (excluding, for the avoidance of doubt, all of the First Lien Claims held by the Sponsor Entities and the Consenting Second Lien Lenders).

129.    "*Required Second Lien Lenders*" means the Consenting Second Lien Lenders who hold, in the aggregate, at least 66.67% in principal amount outstanding of all Second Lien Claims held by the Consenting Second Lien Lenders (excluding, for the avoidance of doubt, all of the Second Lien Claims held by the Consenting First Lien Lenders and the Sponsor Entities).

130.    "*Restructuring Support Agreement*" means that certain Amended and Restated Restructuring Support Agreement, dated as of January 30, 2017, by and among the Debtors and the Restructuring Support Parties, including all exhibits thereto, as such agreement may be amended from time to time in accordance with the terms thereof, which shall be attached as **Exhibit B** to the Disclosure Statement.

131.    "*Restructuring Support Parties*" means, collectively, the Consenting First Lien Lenders, the First Lien Agent, the Consenting Second Lien Lenders, the Second Lien Agent, and the Sponsor Entities, in each case, that are party to the Restructuring Support Agreement.

132.    "*Restructuring Transactions*" shall have the meaning set forth in Section 4.2 of the Plan.

133.    "*Restructuring Transactions Exhibit*" means an exhibit, which shall be included in the Plan Supplement, that sets forth the Restructuring Transactions the Debtors intend to implement on the Effective Date.

134.    "*RSA Definitive Document Requirements*" means that the Definitive Documents shall be subject to the respective consent rights of the Debtors and the applicable Restructuring Support Parties as set forth in the Restructuring Support Agreement.

135.    "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means a schedule that will be Filed as part of the Plan Supplement at the Debtors' option and will include a list of all Executory Contracts and Unexpired Leases that the Debtors intend to reject as of the Effective Date.

136.    "*Second Lien Agent*" means Wilmington Trust, National Association, or any successor thereto, as successor administrative agent and collateral agent under the Second Lien Credit Agreement, in its capacity as such.

137.    "*Second Lien Claims*" means all Claims against the Debtors arising under the Second Lien Loan Documents.

138.    "*Second Lien Credit Agreement*" means that certain Second Lien Credit Agreement, dated as of October 3, 2014 among certain of the Debtors, the Second Lien Agent, and the Second Lien Lenders.

139.    "*Second Lien Exit Credit Agreement*" means the credit agreement evidencing the Second Lien Exit Facility.

140.    "*Second Lien Exit Facility*" means the new second lien term loan facility, in an amount of $75 million less the amount of the First Lien Exit Facility, to be entered into by the Reorganized Debtors on terms consistent with those set forth in the Exit Credit Facilities Term Sheet.

141.    "*Second Lien Exit Facility Documents*" means the Second Lien Exit Credit Agreement and any guarantee, security agreement, deed of trust, mortgage, and other relevant documentation entered into with respect to the Second Lien Exit Facility.

142.    "*Second Lien Exit Loans*" means the loans that shall be deemed on the Effective Date to be outstanding under the Second Lien Exit Credit Agreement.

143.   "*Second Lien Lenders*" means the lenders and their Affiliates party to the Second Lien Credit Agreement, in their capacities as such.

144.   "*Second Lien Loan Documents*" means, collectively, the Second Lien Credit Agreement, and any security documents, including the Prepetition Intercreditor Agreement, the letter of credit documentation, and any other collateral and ancillary documents, including any applicable forbearance agreement, executed in connection with the Second Lien Credit Agreement.

145.   "*Second Lien Secured Parties*" means, collectively, the Second Lien Lenders and Second Lien Agent.

146.   "*Secured Claim*" means a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

147.   "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

148.   "*Securities Act*" means the Securities Act of 1933, as amended, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law.

149.   "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

150.   "*Servicer*" means an agent or other authorized representative of holders of Claims or Interests.

151.   "*Solicitation Agent*" means Rust Consulting/Omni Bankruptcy, the notice, claims, and solicitation agent retained by the Debtors in the Chapter 11 Cases by Bankruptcy Court order.

152.   "*Solicitation Materials*" means, collectively, the solicitation materials with respect to the Plan.

153.   "*Sponsor Entities*" means, collectively, the Consenting Sponsors, the Consenting Sponsor Lenders, and Apax Partners, L.P.

154.   "*Third-Party Release*" means the releases set forth in Section 8.3 of the Plan.

155.   "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of New York.

156.   "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim to a holder that has not:  (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

157.   "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

158.   "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class consisting of Claims or Interest that are not impaired within the meaning of section 1124 of the Bankruptcy Code.

159.    "*Warrant Agreement*" means the Definitive Document governing the Warrants, the form of which is attached to the Disclosure Statement as **Exhibit G**, and as further amended, modified or supplemented, shall be Filed as part of the Plan Supplement.

160.    "*Warrant Equity*" means the New Common Stock issuable upon the exercise of the Warrants.

161.    "*Warrants*" means 5-year warrants for 10% of the New Common Stock at the exercise price and on the terms and conditions set forth in the Warrant Agreement.

## 1.2    Rules of Interpretation

For purposes of the Plan:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (e) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (j)  references to "Proofs of Claim," "holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "holders of Interests," "Disputed Interests," and the like as applicable; (k) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (l) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation."

## 1.3    Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## 1.4    Governing Law

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to conflict of laws principles.

## 1.5    Reference to Monetary Figures

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

**1.6**     **Reference to the Debtors or the Reorganized Debtors**

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

**1.7**     **Controlling Document**

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control.  In the event of an inconsistency between the Plan and any Definitive Documents or other documents, schedules or exhibits contained in the Plan Supplement, subject to the RSA Definitive Document Requirements, such Definitive Document or other document, schedule or exhibit shall control.  In the event of an inconsistency between the Plan or any Definitive Documents or other documents, schedules or exhibits contained in the Plan Supplement, on the one hand, and the Confirmation Order, on the other hand, the Confirmation Order shall control.

**ARTICLE II**

**ADMINISTRATIVE AND PRIORITY CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, Professional Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

**2.1**     **Administrative Claims**

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtors, or the Reorganized Debtors, as applicable, each holder of an Allowed Administrative Claim (other than holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such holder and the Debtors or the Reorganized Debtors, as applicable; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

**2.2**     **DIP Claims**

Subject to the DIP Orders, on the Effective Date, the DIP Claims and DIP Payments shall be deemed to be Allowed in the full amount due and owing under the DIP Facility as of the Effective Date.

On the Effective Date, (i) the DIP Payments shall be paid in full in Cash and (ii) the remaining DIP Claims shall be converted into First Lien Exit Loans.

**2.3**     **Professional Claims**

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than 45 days after the Effective Date.  The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court.  The Reorganized Debtors shall pay Professional Claims

14

in Cash in the amount the Bankruptcy Court allows, including from the Professional Fee Escrow Account, which the Reorganized Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date. Professionals shall deliver to the Debtors their estimates for purposes of the Reorganized Debtors computing the Professional Fee Amount no later than three (3) Business Days prior to the anticipated Effective Date. For the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Claims filed with the Bankruptcy Court. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. No funds in the Professional Fee Escrow Account shall be property of the Estates, and the Professional Fee Escrow Account shall be maintained in trust solely for the benefit of holders of Professional Claims. Any funds remaining in the Professional Fee Escrow Account after all Allowed Professional Claims have been paid shall be turned over to the Reorganized Debtors.

From and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**2.4    Priority Tax Claims**

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in accordance with the terms of any agreement between the Debtors and the holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business.

**2.5    Statutory Fees**

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors. On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

**ARTICLE III**

**CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS**

**3.1    Classification of Claims and Interests**

The Plan constitutes a separate plan proposed by each Debtor within the meaning of section 1121 of the Bankruptcy Code. Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied or disallowed by Final Order prior to the Effective Date. For all purposes under the Plan, each Class will contain sub-Classes for each of the Debtors (*i.e.*, there will be eight (8) Classes for each Debtor other than, for the avoidance of doubt, Class 8, which shall exist solely at Holdings); provided that any Class that does not contain any Allowed Claims or Allowed Interests with respect to a particular Debtor will be treated in accordance with Section 3.4 below.

Below is a chart assigning each Class a number for purposes of identifying each separate Class.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 2 | Other Priority Claims | Unimpaired | Presumed to Accept |
| 3 | First Lien Claims | Impaired | **Entitled to Vote** |
| 4 | Second Lien Claims | Impaired | **Entitled to Vote** |
| 5 | General Unsecured Claims | Unimpaired | Presumed to Accept |
| 6 | Intercompany Claims | Unimpaired/Impaired | Not Entitled to Vote |
| 7 | Intercompany Interests | Unimpaired | Presumed to Accept |
| 8 | Interests in Holdings | Impaired | Deemed to Reject |

## 3.2    Treatment of Classes of Claims and Interests

Except to the extent that the Debtors and a holder of an Allowed Claim or Allowed Interest, as applicable, agree to less favorable treatment, such holder shall receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of, and in exchange for, such holder's Allowed Claim or Allowed Interest.  Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

(a)    **Class 1 — Other Secured Claims**

(1)    *Classification*:  Class 1 consists of any Other Secured Claims against any Debtor.

(2)    *Treatment*:  Each holder of an Allowed Other Secured Claim shall receive, as the Debtors or the Reorganized Debtors, as applicable, determine either:

(A)    payment in full, in Cash, of the unpaid portion of its Allowed Other Secured Claim, including any interest thereon required to be paid under section 506(b) of the Bankruptcy Code (or if payment is not then due, in accordance with the terms of such allowed Other Secured Claim) on the latest of:  (i) on or as soon as reasonably practicable after the Effective Date if such Allowed Other Secured Claim is Allowed as of the Effective Date; (ii) on or as soon as reasonably practicable after the date such Other Secured Claim is Allowed; and (iii) the date such Allowed Other Secured Claim becomes due and payable, or as soon thereafter as is reasonably practicable;

(B)    reinstatement pursuant to section 1124 of the Bankruptcy Code;

(C)    the collateral securing its Allowed Other Secured Claim, plus any interest thereon required to be paid under section 506(b) of the Bankruptcy Code; or

(D)    such other recovery necessary to satisfy section 1129 of the Bankruptcy Code.

(3)    *Voting*:  Class 1 is Unimpaired.  Holders of Allowed Other Secured Claims in Class 1 are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Other Secured Claims in Class 1 are not entitled to vote to accept or reject the Plan.

(b)　　　**Class 2 — Other Priority Claims**

　　(1)　　*Classification*: Class 2 consists of any Other Priority Claims against any Debtor.

　　(2)　　*Treatment*: Each holder of an Allowed Other Priority Claim shall receive payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim on the latest of: (i) on or as soon as reasonably practicable after the Effective Date if such Allowed Other Priority Claim is Allowed as of the Effective Date; (ii) on or as soon as reasonably practicable after the date such Other Priority Claim is Allowed; and (iii) the date such Allowed Other Priority Claim becomes due and payable, or as soon thereafter as is reasonably practicable.

　　(3)　　*Voting*: Class 2 is Unimpaired. Holders of Allowed Other Priority Claims in Class 2 are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Priority Claims in Class 2 are not entitled to vote to accept or reject the Plan.

(c)　　　**Class 3 — First Lien Claims**

　　(1)　　*Classification*: Class 3 consists of all First Lien Claims against any Debtor.

　　(2)　　*Allowance:* On the Effective Date the First Lien Claims shall be Allowed in the aggregate principal amount of not less than $366.2 million, plus (i) any prepetition letter of credit obligations that do not constitute Converted L/Cs, and (ii) any accrued but unpaid interest thereon payable as of the Petition Date at the applicable default interest rate and any accrued but unpaid fees and expenses payable in accordance with the First Lien Loan Documents. For the avoidance of doubt, the First Lien Claims shall not include any Converted L/Cs. The First Lien Claims shall not be subject to avoidance, subordination, setoff, offset, deduction, objection, challenge, recharacterization, surcharge under section 506(c) of the Bankruptcy Code or any other claim or defense.

　　(3)　　*Treatment*: On the Effective Date, each holder of an Allowed First Lien Claim shall receive on account of such Claim its Pro Rata share of (i) 96% of the New Common Stock (subject to dilution on account of, to the extent applicable, the MIP Equity, the Exit Commitment Equity, and the Warrant Equity), and (ii) the Second Lien Exit Loans; provided that the foregoing treatment, and distributions to holders, of Allowed First Lien Claims shall take into account an Approved 363 Sale Adjustment and applicable Restructuring Transactions, in each case, to the extent applicable.

　　(4)　　*Voting*: Class 3 is Impaired. Holders of Allowed First Lien Claims in Class 3 are entitled to vote to accept or reject the Plan.

(d)　　　**Class 4 — Second Lien Claims**

　　(1)　　*Classification*: Class 4 consists of all Second Lien Claims against any Debtor.

　　(2)　　*Allowance:* On the Effective Date, the Second Lien Claims shall be Allowed in the aggregate principal amount of not less than $180.2 million, plus any accrued but unpaid interest thereon payable as of the Petition Date at the applicable default interest rate and any accrued but unpaid fees and expenses payable in accordance with the Second Lien Loan Documents. The Second Lien Claims shall not be subject to avoidance, subordination, setoff, offset, deduction, objection, challenge, recharacterization, surcharge under section 506(c) of the Bankruptcy Code or any other claim or defense.

(3)     *Treatment*:  On the Effective Date, each holder of an Allowed Second Lien Claim shall receive its Pro Rata share of (i) 4% of the New Common Stock (subject to dilution on account of, to the extent applicable, the MIP Equity, the Exit Commitment Equity, and the Warrant Equity), and (ii) the Warrants; <u>provided</u> that the foregoing treatment, and distributions to holders, of Allowed Second Lien Claims shall take into account an Approved 363 Sale Adjustment and applicable Restructuring Transactions, in each case, to the extent applicable.

(4)     *Voting*:  Class 4 is Impaired.  Holders of Allowed Second Lien Claims in Class 4 are entitled to vote to accept or reject the Plan.

(e)     **Class 5 — General Unsecured Claims**

(1)     *Classification*:  Class 5 consists of any General Unsecured Claims against any Debtor.

(2)     *Treatment*:  Except to the extent that a holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of such Claim or has been paid or disallowed by Final Order prior to the Effective Date, on and after the Effective Date, the Reorganized Debtors shall continue to pay or treat each Allowed General Unsecured Claim in the ordinary course of business as if the Chapter 11 Cases had never been commenced, subject to all claims, defenses or disputes the Debtors and Reorganized Debtors may have with respect to such Claims, including as provided in <u>Section 4.17</u> of the Plan.

(3)     *Voting*:  Class 5 is Unimpaired.  Holders of Allowed General Unsecured Claims in Class 5 are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed General Unsecured Claims in Class 5 are not entitled to vote to accept or reject the Plan.

(f)     **Class 6 — Intercompany Claims**

(1)     *Classification*:  Class 6 consists of any Intercompany Claims against any Debtor.

(2)     *Treatment*:  Each Allowed Intercompany Claim shall be Reinstated or cancelled (by way of contribution to capital or otherwise) as of the Effective Date, at the Debtors' or the Reorganized Debtors' option, subject to (A) the Restructuring Transactions, (B) the consent of the Required First Lien Lenders, which consent shall not be unreasonably withheld, conditioned or delayed, and (C) the consent of the Required Second Lien Lenders solely to the extent required by the Second Lien Lender Consent Right (as defined in the Restructuring Support Agreement), which consent shall not be unreasonably withheld, conditioned or delayed.  No distribution shall be made on account of any Allowed Intercompany Claim.

(3)     *Voting*:  Class 6 is either Unimpaired, in which case the holders of Allowed Intercompany Claims in Class 6 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and not receiving any distribution under the Plan, in which case the holders of such Allowed Intercompany Claims in Class 6 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each holder of an Allowed Intercompany Claim in Class 6 will not be entitled to vote to accept or reject the Plan.

    (g)    **Class 7 — Intercompany Interests**

        (1)    *Classification*:  Class 7 consists of any Intercompany Interests in any Debtor.

        (2)    *Treatment*:  Each Allowed Intercompany Interest shall be Reinstated as of the Effective Date, subject to (A) the Restructuring Transactions, (B) the consent of the Required First Lien Lenders, which consent shall not be unreasonably withheld, conditioned or delayed, and (C) the consent of the Required Second Lien Lenders solely to the extent required by the Second Lien Lender Consent Right, which consent shall not be unreasonably withheld, conditioned or delayed; provided, however, that for the avoidance of doubt, Holdings' Interests in Debtor Answers Corporation shall either be Reinstated or, at the Reorganized Debtors' option, subject to (A) the Restructuring Transactions, (B) the consent of the Required First Lien Lenders, which consent shall not be unreasonably withheld, conditioned or delayed, and (C) the consent of the Required Second Lien Lenders solely to the extent required by the Second Lien Lender Consent Right, which consent shall not be unreasonably withheld, conditioned or delayed, contributed by Holdings to a newly-formed subsidiary of Holdings that shall be disregarded from Holdings for U.S. federal income tax purposes.

        (3)    *Voting*:  Class 7 is Unimpaired. Holders of Allowed Intercompany Interests in Class 7 are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Holders of Allowed Intercompany Interests in Class 7 are not entitled to vote to accept or reject the Plan.

    (h)    **Class 8 — Interests in Holdings**

        (1)    *Classification*:  Class 8 consists of all Interests in Holdings.

        (2)    *Treatment*:  On the Effective Date, all Interests in Holdings will be cancelled and the holders of Interests in Holdings shall not receive or retain any distribution, property, or other value on account of their Interests in Holdings.

        (3)    *Voting*:  Class 8 is Impaired.  Holders of Interests in Class 8 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

**3.3**    **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claim.

**3.4**    **Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest, or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing, shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**3.5**    **Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims or Interests eligible to vote and no holder of Claims or Interests eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the holders of such Claims or Interests in such Class.

**3.6    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan (subject to the Restructuring Support Agreement) to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by (a) modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules and (b) withdrawing the Plan as to an individual Debtor at any time before the Confirmation Date.

**3.7    Intercompany Interests**

To the extent Reinstated under the Plan, the Intercompany Interests shall be Reinstated for the ultimate benefit of the holders of the New Common Stock, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the holders of Allowed Claims. For the avoidance of doubt, to the extent Reinstated pursuant to the Plan, on and after the Effective Date, all Intercompany Interests shall be owned by the same Reorganized Debtor that corresponds with the Debtor that owned such Intercompany Interests prior to the Effective Date.

**ARTICLE IV**

**PROVISIONS FOR IMPLEMENTATION OF THE PLAN**

**4.1    General Settlement of Claims and Interests**

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of Claims and Interests and is fair, equitable, and is within the range of reasonableness. Subject to Article VI of the Plan, all distributions made to holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

**4.2    Restructuring Transactions**

On or about the Effective Date, the Debtors or the Reorganized Debtors, in each case, with the consent of the Required First Lien Lenders and, subject to the Second Lien Lender Consent Right and the Sponsor Entities Consent Right (in each case, as defined in, and solely to the extent applicable under, the Restructuring Support Agreement), the Required Second Lien Lenders and the Sponsor Entities, which consent shall not be unreasonably withheld, conditioned or delayed, shall take all actions as may be necessary or appropriate to effectuate the transactions described in, approved by, contemplated by, or necessary to effectuate the Restructuring Support Agreement and the Plan (collectively, the "Restructuring Transactions"), including: (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree, including, but not limited to the documents comprising the Plan Supplement; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other transactions that are required to effectuate the Restructuring Transactions, including, but not limited to those described in the Restructuring Transactions Exhibit, in the most tax efficient manner, including the mergers, consolidations, restructurings, conversions, dispositions, transfers, formations, organizations, dissolutions or liquidations; (e) the execution, delivery, and filing, if applicable, of the Exit Credit Facilities Documents, the New Stockholders'

20

Agreement, and the Warrant Agreement; and (f) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law. The Restructuring Transactions may include a taxable transfer of certain of the Debtors' assets or entities to a newly-formed entity (or an affiliate or subsidiary of such entity) formed and controlled by certain holders of Claims against the Debtors and, in such case, the New Common Stock (and/or other interests) issued to holders of Claims pursuant to the Plan may comprise stock (and/or other interests) of more than one entity. In such event, (i) equivalent percentages of the common stock (and/or other interests) of such separated entity as those percentages of New Common Stock to be granted to holders of Allowed Class 3 Claims and Allowed Claim 4 Claims shall be granted to holders of Allowed Class 3 Claims and Allowed Claim 4 Claims and (ii) the indebtedness underlying the New Exit Credit Facilities may be allocated among such separated entity and the other Reorganized Debtors in a manner agreed upon by the Debtors and the Required First Lien Lenders, and subject to the the Second Lien Lender Consent Right and the Sponsor Entities Consent Right (in each case, as defined in, and solely to the extent applicable under, the Restructuring Support Agreement).

**4.3**    **New Common Stock and Warrants**

All existing Interests in Holdings shall be cancelled as of the Effective Date and, subject to the Restructuring Transactions, Reorganized Holdings shall issue and contribute the New Common Stock, including the Exit Commitment Equity, and Warrants to Reorganized Debtor Answers Corporation, which shall distribute the New Common Stock, including the Exit Commitment Equity, and Warrants to holders of Claims entitled to receive New Common Stock, including the Exit Commitment Equity, and/or Warrants pursuant to the Plan. The issuance of the New Common Stock and Warrants, including the Exit Commitment Equity and any MIP Equity (to the extent applicable), shall be authorized without the need for any further corporate action and without any further action by the Debtors, Reorganized Debtors, or Reorganized Holdings, as applicable. Reorganized Holdings' New Organizational Documents shall authorize the issuance and distribution on the Effective Date of New Common Stock, including the Exit Commitment Equity, and Warrants to the Distribution Agent for the benefit of holders of Allowed Claims in Class 3 and Class 4 (as applicable) in accordance with the terms of Article III of the Plan. All New Common Stock, including the Exit Commitment Equity, and Warrants issued under the Plan shall be duly authorized, validly issued, fully paid, and non-assessable, and the holders of New Common Stock and Warrants shall be deemed to have accepted the terms of the New Stockholders' Agreement (solely in their capacity as shareholders and warrants holders of Reorganized Holdings) and to be parties thereto without further action or signature. The New Stockholders' Agreement shall be effective as of the Effective Date and, as of such date, shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Common Stock, including the Exit Commitment Equity, and Warrants shall be bound thereby.

**4.4**    **Exit Credit Facilities**

On the Effective Date the Reorganized Debtors shall enter into the Exit Credit Facilities, the terms of which will be set forth in the Exit Credit Facilities Documents, as applicable. Confirmation of the Plan shall be deemed approval of the Exit Credit Facilities and the Exit Credit Facilities Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, including issuance of the Exit Commitment Equity to the lenders under the First Lien Exit Facility, and authorization of the Reorganized Debtors to enter into and execute the Exit Credit Facilities Documents and such other documents as may be required to effectuate the treatment afforded by the Exit Credit Facilities. On the Effective Date, all of the Liens and security interests to be granted in accordance with the Exit Credit Facilities Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Credit Facilities Documents, (c) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Credit Facilities Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the persons and entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the

Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

**4.5    Exemption from Registration Requirements**

All shares of the New Common Stock and the Warrants issued to (a) holders of First Lien Claims and (b) holders of Second Lien Claims, as applicable, on account of their Claims and all shares of New Common Stock (including any other securities issuable upon exercise of the Warrants) issued upon the exercise of the Warrants, will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance on Section 1145(a) of the Bankruptcy Code.  The Exit Commitment Equity will be issued without registration under the Securities Act pursuant to an exemption from the registration requirements provided by 4(a)(2) of the Securities Act, and as a result, will be "restricted securities" within the meaning of Rule 144 promulgated under the Securities Act. Recipients of the New Common Stock and the Warrants are advised to consult with their own legal advisors as to the availability of any exemption from registration under the Securities Act and any applicable state Blue Sky Law.

Should the Reorganized Debtors elect on or after the Effective Date to reflect any ownership of the New Common Stock, including the Exit Commitment Equity, and/or the Warrants or the New Common Stock (or other securities issuable upon exercise of the Warrants) issued upon the exercise of the Warrants through the facilities of the DTC, the Reorganized Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the New Common Stock, including the Exit Commitment Equity (or other securities issuable upon exercise of the Warrants) and Warrants under applicable securities laws.

Notwithstanding anything to the contrary in the Plan, no entity (including, for the avoidance of doubt, DTC) shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Common Stock, including the Exit Commitment Equity, and Warrants and the shares of New Common Stock (including any other securities issuable upon exercise of the Warrants) issued upon the exercise of the Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.  DTC shall be required to accept and conclusively rely upon the Plan or Confirmation Order in lieu of a legal opinion regarding whether the New Common Stock, including the Exit Commitment Equity, and/or Warrants and/or shares of New Common Stock (including any other securities issuable upon exercise of Warrants) issued upon the exercise of the Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

**4.6    Subordination**

The allowance, classification, and treatment of satisfying all Claims and Interests under the Plan takes into consideration any and all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510(b) or 510(c) of the Bankruptcy Code, or otherwise, including for the avoidance of doubt the Prepetition Intercreditor Agreement.  On the Effective Date, any and all subordination rights or obligations that a holder of a Claim or Interest may have with respect to any distribution to be made under the Plan will be discharged and terminated, and all actions related to the enforcement of such subordination rights will be enjoined permanently. Accordingly, distributions under the Plan to holders of Allowed Claims (including, for the avoidance of doubt, distributions to holders of Allowed Claims in Class 4) will not be subject to turnover or payment to a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

**4.7    Vesting of Assets in the Reorganized Debtors**

Except as otherwise provided herein, or in any agreement, instrument, or other document incorporated in the Plan (including the Restructuring Transactions), on the Effective Date, all property in each Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and pursue, compromise or settle any Claims, Interests, or Causes of Action without

supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**4.8**    **Cancellation of Instruments, Certificates, and Other Documents**

On the Effective Date, except as otherwise provided in the Plan:  (a) the obligations of the Debtors under the DIP Facility, the DIP L/C Facility, the First Lien Loan Documents, the Second Lien Loan Documents, and any Interest in Holdings, certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of, or ownership interest in, the Debtors giving rise to any Claim or Interest shall be cancelled and the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation, or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be released and discharged; provided that notwithstanding Confirmation or the occurrence of the Effective Date, any such agreement that governs the rights of the holder of an Allowed Claim shall continue in effect solely for purposes of enabling such holder to receive distributions under the Plan on account of such Allowed Claim as provided herein, provided, further, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any expense or liability to the Reorganized Debtors, except to the extent set forth in or provided for under the Plan; provided, further, that nothing in this section shall effect a cancellation of any New Common Stock, Warrants, Intercompany Interests, or Intercompany Claims.

Notwithstanding Confirmation, the occurrence of the Effective Date or anything to the contrary herein, only such matters which by their express terms survive the termination of the First Lien Credit Agreement and the Second Lien Credit Agreement shall survive the occurrence of the Effective Date, including the rights of the First Lien Agent and the Second Lien Agent to expense reimbursement, indemnification and similar amounts.

**4.9**    **Corporate Action**

On the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable: (a) the adoption and/or filing of the New Organizational Documents and the New Stockholders' Agreement; (b) the selection of the directors, managers, and officers for the Reorganized Debtors, including the appointment of the New Board and New OpCo Boards; (c) the authorization, issuance, and distribution of New Common Stock and Warrants and the shares of New Common Stock (including any other securities issuable upon exercise of the Warrants) issued upon the exercise of the Warrants; (d) the  rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (e) the entry into the Exit Credit Facilities and the execution, delivery, and filing of the Exit Credit Facilities Documents, as applicable; (f) implementation of the Restructuring Transactions; and (g) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of Reorganized Debtors, and any corporate action required by the Debtors or the other Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors or Reorganized Debtors.  On or (as applicable) before the Effective Date, the appropriate officers of the Debtors, Reorganized Holdings, or the other Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effectuate the Restructuring Transactions) in the name of and on behalf of Reorganized Holdings and the other Reorganized Debtors, including the Exit Credit Facilities Documents and any and all other agreements, documents, Securities, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court.  The authorizations and approvals contemplated by this Section 4.9 shall be effective notwithstanding any requirements under non-bankruptcy law.

**4.10**     **Corporate Existence**

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement (including the Restructuring Transactions), on the Effective Date, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation or bylaws (or other analogous formation documents) is amended by the Plan or otherwise, and to the extent any such document is amended, such document is deemed to be amended pursuant to the Plan and requires no further action or approval (other than any requisite filings required under applicable state or federal law).

**4.11**     **Charter, Bylaws, and New Organizational Documents**

On the Effective Date, or as soon thereafter as is reasonably practicable, the Reorganized Debtors' respective certificates of incorporation and bylaws (and other formation and constituent documents relating to limited liability companies) shall be amended as may be required to be consistent with the provisions of the Plan, the New Stockholders' Agreement, the Warrant Agreement, the Governance Term Sheet, and the Exit Credit Facilities Documents, as applicable, and the Bankruptcy Code. The New Organizational Documents shall, among other things: (a) authorize the issuance of the New Common Stock and the Warrants and the shares of New Common Stock (including any other securities issuable upon exercise of the Warrants) issued upon the exercise of the Warrants; and (b) pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, include a provision prohibiting the issuance of non-voting equity Securities. After the Effective Date, each Reorganized Debtor may amend and restate its certificate of incorporation and other formation and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of the New Organizational Documents, the New Stockholders Agreement, the Warrant Agreement, and the Governance Term Sheet.

**4.12**     **Effectuating Documents; Further Transactions**

On and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors and managers thereof, shall be authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Exit Credit Facilities Documents, as applicable, and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

**4.13**     **Section 1146(a) Exemption**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan (including the Restructuring Transactions) or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; (d) the grant of collateral as security for any or all of the Exit Credit Facilities, as applicable; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan (including the Restructuring Transactions), shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or

24

recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 4.14    Directors and Officers

The New Board shall consist of seven (7) members, the initial members of which shall consist of (a) the current Chief Executive Officers of Foresee and Webcollage and (b) the remaining members shall be appointed by (i) any Consenting First Lien Lender that holds an amount of First Lien Claims that would result in such Consenting First Lien Lender becoming on the Effective Date (before accounting for dilution by the Exit Commitment Equity) a holder of greater than 15% of the New Common Stock, which holder shall be entitled to appoint one member and (ii) the Ad Hoc First Lien Group shall be entitled to appoint the remaining members. The members of the New Board and the New OpCo Boards will be identified as part of the Plan Supplement at or prior to the Confirmation Hearing consistent with section 1129(a)(5) of the Bankruptcy Code. On the Effective Date, except as otherwise provided in the Plan Supplement or announced on the record at the Confirmation Hearing, the existing officers of the Debtors (other than the Chief Restructuring Officer) shall serve in their current capacities for the Reorganized Debtors. From and after the Effective Date, each director, officer, or manager of the Reorganized Debtors shall serve pursuant to the terms of the respective Reorganized Debtor's charters and bylaws or other formation and constituent documents, and applicable laws of the respective Reorganized Debtor's jurisdiction of formation.

### 4.15    Employee Arrangements of the Reorganized Debtors

As of the Effective Date, the Reorganized Debtors shall be authorized to: (a) maintain, amend, or revise employment, indemnification, and other arrangements with their directors, officers, and employees, that were employed by, or serving on the board of directors of, any of the Debtors as of the Petition Date that have not been rejected before or as of the Effective Date, subject to the terms and conditions of any such agreement; and (b) enter into new employment, indemnification, and other arrangements with directors, officers, and employees, in the case of this clause (b), as determined by the board of directors of the applicable Reorganized Debtor. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

### 4.16    Management Incentive Plan

Prior to the Effective Date, the Debtors and the Ad Hoc First Lien Group shall negotiate in good faith to determine a mutually agreed upon Management Incentive Plan, and the Debtors and the Ad Hoc First Lien Group shall consult with the Ad Hoc Second Lien Group regarding the foregoing to the extent such Management Incentive Plan proposes to grant participants therein MIP Equity or other securities of Reorganized Holdings. On or after the Effective Date, except as otherwise set forth in any employment agreement, the members of the management teams of the divisions of the Reorganized Debtors will be eligible to participate in the Management Incentive Plan. The New Board shall adopt and implement the Management Incentive Plan as soon as practicable after the Effective Date, which may be an equity incentive program pursuant to which the MIP Equity and/or OpCo MIP Equity will be reserved for issuance. To the extent applicable, any MIP Equity issued in connection with the Management Incentive Plan shall dilute all of the New Common Stock equally, including the Exit Commitment Equity and the New Common Stock issuable upon the exercise of the Warrants. Additionally, the New Board shall approve an annual cash bonus program for the management teams of the Reorganized Debtors as soon as practicable after the Effective Date. Confirmation shall be deemed approval of the Management Incentive Plan, without any further action or approval required by the Bankruptcy Court.

### 4.17    Preservation of Causes of Action

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, including pursuant to Article VIII of the Plan, the DIP Orders, or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date,

including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against them. The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided herein.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, including pursuant to Article VIII of the Plan, the DIP Orders, or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Section 4.17 include any claim or Cause of Action with respect to, or against, a Released Party.

In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action preserved pursuant to the first paragraph of this Section 4.17 that a Debtor may hold against any Entity shall vest in the Reorganized Debtors. The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

### 4.18      Release of Avoidance Actions

On the Effective Date, the Debtors, on behalf of themselves and their estates, shall release any and all Avoidance Actions and the Debtors and the Reorganized Debtors, and any of their successors or assigns, and any Entity acting on behalf of the Debtors or the Reorganized Debtors, shall be deemed to have waived the right to pursue any and all Avoidance Actions, except for Avoidance Actions brought as counterclaims or defenses to claims asserted against the Debtors.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 5.1      Assumption of Executory Contracts and Unexpired Leases

Each Executory Contract and Unexpired Lease shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease (a) was previously assumed or rejected; (b) was previously expired or terminated pursuant to its own terms; (c) is the subject of a motion or notice to assume or assume and assign Filed on or before the Confirmation Date; or (d) is designated specifically, or by category, as an Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases. The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates. The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions and assignments.

Except as otherwise provided herein or agreed to by the Debtors and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

5.2      **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**

The Debtors or the Reorganized Debtors, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be filed with the Solicitation Agent on or before 30 days after the Effective Date. Any such request that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or the Reorganized Debtors of the Cure; *provided*, *however*, that nothing herein shall prevent the Reorganized Debtors from paying any Cure despite the failure of the relevant counterparty to file such request for payment of such Cure. The Reorganized Debtors also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be filed with the Bankruptcy Court on or before 30 days after the Effective Date. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Debtors' or Reorganized Debtors', as applicable, first scheduled omnibus hearing for which such objection is timely filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is any dispute regarding any Cure, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this Section 5.2 shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Section 5.2, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.**

5.3      **Rejection Damages Claims**

In the event that the rejection of an Executory Contract or Unexpired Lease by any of the Debtors results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors or their respective properties or interests in property as agents, successors, or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtors and the Reorganized Debtors no later than thirty (30) days after the later of (i) the Effective Date or (ii) the effective date of such executory contract or unexpired lease. Any such Claims, to the extent Allowed, shall be classified in Class 5 (General Unsecured Claims).

5.4      **Indemnification**

On and as of the Effective Date, the Indemnification Provisions will be assumed and irrevocable and will survive the effectiveness of the Plan, and the New Organizational Documents will provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to the Debtors' and the Reorganized Debtors' directors, officers, employees, or agents that were employed by, or serving on the board of directors of, any of the Debtors as of the Petition Date, to the fullest extent permitted by law and at least to the same extent as the organizational documents of each of the respective Debtors on the Petition Date,

against any Claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and, notwithstanding anything in the Plan to the contrary, none of the Reorganized Debtors will amend and/or restate the New Organizational Documents before or after the Effective Date to terminate or adversely affect any of the Reorganized Debtors' obligations to provide such indemnification rights or such directors', officers', employees', or agents' indemnification rights.

**5.5     Insurance Policies**

Notwithstanding anything in the Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto, including all D&O Liability Insurance Policies (including tail coverage liability insurance). Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' assumption of all such insurance policies, including the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of insurance policies, including the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be filed, and shall survive the Effective Date.

After the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce, modify or restrict in any way, the coverage under any D&O Liability Insurance Policy (including such tail coverage liability insurance) in effect as of the Effective Date, and all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date of the Plan shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date of the Plan.

**5.6     Contracts and Leases After the Petition Date**

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed under section 365 of the Bankruptcy Code, will be performed by the applicable Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Such contracts and leases that are not rejected under the Plan shall survive and remain unaffected by entry of the Confirmation Order.

**5.7     Reservation of Rights**

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or the Reorganized Debtors, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**5.8     Nonoccurrence of Effective Date**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

# ARTICLE VI

# PROVISIONS GOVERNING DISTRIBUTIONS

**6.1**    **Distributions on Account of Claims and Interests Allowed as of the Effective Date**

Except as otherwise provided herein, a Final Order, or as otherwise agreed to by the Debtors or the Reorganized Debtors, as the case may be, and the holder of the applicable Claim, on the first Distribution Date, the Distribution Agent shall make initial distributions under the Plan on account of Claims Allowed on or before the Effective Date; provided, however, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims and Allowed Secured Tax Claims shall be paid in accordance with Sections 2.4 and 3.2(a), respectively. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtors and the holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.  A Distribution Date shall occur no more frequently than once in every 90 day period after the Effective Date, as necessary, in the Reorganized Debtors' sole discretion.

**6.2**    **Rights and Powers of the Distribution Agent**

(a)    **Powers of Distribution Agent**

The Distribution Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

(b)    **Expenses Incurred On or After the Effective Date**

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Distribution Agent shall be paid in Cash by the Reorganized Debtors.

**6.3**    **Special Rules for Distributions to Holders of Disputed Claims and Interests**

Notwithstanding any provision otherwise in the Plan and except as otherwise agreed by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; and (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim or Interest have been resolved by settlement or Final Order or the Claims have been Allowed or expunged.

**6.4**    **Delivery of Distributions**

(a)    **Record Date for Distributions**

On the Effective Date, the various transfer registers for each class of Claims or Interests as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record holders of any Claims or Interests.  The Distribution Agent shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Effective Date.  In addition, with respect to payment of any Cure amounts or disputes over any Cure amounts, neither the Debtors nor the Distribution Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or

unexpired lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure amount.

(b)      **Distribution Process**

The Distribution Agent shall make all distributions required under the Plan, except that with respect to distributions to holders of Allowed Claims governed by a separate agreement, which shall include the DIP Facility, the DIP L/C Facility, the First Lien Credit Agreement, and the Second Lien Credit Agreement, and administered by a Servicer, including the DIP Administrative Agent, the First Lien Agent, and the Second Lien Agent, the Distribution Agent, the Debtor, and the applicable Servicer and the Ad Hoc First Lien Group and Ad Hoc Second Lien Group, as applicable, shall exercise commercially reasonable efforts to implement appropriate mechanics governing such distributions in accordance with the Plan and the terms of the governing agreement. Except as otherwise provided herein, and notwithstanding any authority to the contrary, distributions to holders of Allowed Claims, including Claims that become Allowed after the Effective Date, shall be made to holders of record or their respective designees as of the Effective Date: (1) to the address of such holder or designee as set forth in the applicable register (or if the appropriate notice has been provided pursuant to the governing agreement in writing, on or before the date that is 10 days before the Effective Date, of a change of address or an identification of designee, to the changed address or to such designee, as applicable); or (2) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the applicable register, no Proof of Claim has been filed and the Distribution Agent has not received a written notice of a change of address on or before the date that is 10 days before the Effective Date. The Debtors, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan. Except as otherwise provided in the Plan, holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

(c)      **Compliance Matters**

In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

(d)      **Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal, National Edition*, on the Effective Date.

(e)      **Fractional, Undeliverable, and Unclaimed Distributions**

(1)      *Fractional Distributions*. Whenever any distribution of fractional shares of New Common Stock would otherwise be required pursuant to the Plan, the actual distribution shall reflect a rounding of such fraction to the nearest share (up or down), with half shares or less being rounded down. Solely for purposes of calculating the number of shares of New Common Stock on account of the Exit Commitment Equity in connection with the First Lien Exit Facility, the per share price utilized in such calculation will be rounded to the fourth decimal.

(2)      *Undeliverable Distributions*.  If any distribution to a holder of an Allowed Claim is returned to the Distribution Agent as undeliverable, no further distributions shall be made to such holder unless and until the Distribution Agent is notified in writing of such holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such holder on the next Distribution Date.  Undeliverable distributions shall remain in the possession of the Reorganized Debtors until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtors or is cancelled pursuant to Section 6.4(e)(3) below, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

(3)      *Reversion*.  Any distribution under the Plan that is an Unclaimed Distribution for a period of six months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the applicable Reorganized Debtor and, to the extent such Unclaimed Distribution is New Common Stock or Warrants, shall be deemed cancelled.  Upon such revesting, the Claim of the holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

(f)      **Surrender of Cancelled Instruments or Securities**

On the Effective Date, each holder of a Certificate shall be deemed to have surrendered such Certificate to the Distribution Agent or a Servicer (to the extent the relevant Claim is governed by an agreement and administered by a Servicer).  Such Certificate shall be cancelled solely with respect to the Debtors, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such Certificate.  Notwithstanding the foregoing paragraph, this Section 6.4(f) shall not apply to any Claims and Interests Reinstated pursuant to the terms of the Plan.

**6.5      Claims Paid or Payable by Third Parties**

(a)      **Claims Paid by Third Parties**

A Claim shall be correspondingly reduced, and the applicable portion of such Claim shall be Disallowed without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives a payment on account of such Claim from a party that is not a Debtor or Reorganized Debtor; *provided* that the Debtors shall provide 21 days' notice to the holder prior to any disallowance of such Claim during which period the holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Bankruptcy Court.  Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such holder shall, within fourteen days of receipt thereof, repay or return the distribution to the Reorganized Debtors to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the Reorganized Debtors annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is repaid.

(b)      **Claims Payable by Insurance Carriers**

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be

Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; provided that the Debtors shall provide 21 days' notice to the holder of such Claim prior to any disallowance of such Claim during which period the holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Bankruptcy Court.

(c)    **Applicability of Insurance Policies**

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.   Notwithstanding anything to the contrary contained (including Article VIII), nothing contained in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any other Entity may hold against any other Entity, including insurers, under any policies of insurance or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**6.6    Setoffs**

Except as otherwise expressly provided for herein, each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the holder of such Allowed Claim, to the extent such Claims, rights, or Causes of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Reorganized Debtor of any such Claims, rights, and Causes of Action that such Reorganized Debtor may possess against such holder.  In no event shall any holder of Claims be entitled to set off any such Claim against any Claim, right, or Cause of Action of the Debtor or Reorganized Debtor (as applicable), unless such holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

**6.7    Allocation Between Principal and Accrued Interest**

Except as otherwise provided herein, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to interest, if any, on such Allowed Claim accrued through the Effective Date.

## ARTICLE VII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

**7.1    Proofs of Claim / Disputed Claims Process**

Notwithstanding section 502(a) of the Bankruptcy Code, and in light of the Unimpaired status of all General Unsecured Claims under the Plan, except as required by Section 5.3 of the Plan, holders of Claims need not file Proofs of Claim, and the Reorganized Debtors and the holders of Claims shall determine, adjudicate, and resolve any disputes over the validity and amounts of such Claims in the ordinary course of business as if the Chapter 11 Cases had not been commenced except that (unless expressly waived pursuant to the Plan) the Allowed amount of such Claims shall be subject to the limitations or maximum amounts permitted by the Bankruptcy Code, including sections 502 and 503 of the Bankruptcy Code, to the extent applicable.  All Proofs of Claim filed in these Chapter 11 Cases, except those permitted by Section 5.3, shall be considered objected to and Disputed without further action by the Debtors.  Upon the Effective Date, all Proofs of Claim filed against the Debtors, regardless of the time of filing, and including Claims filed after the Effective Date, shall be deemed withdrawn, other than as provided below.

Notwithstanding anything in this Section 7.1, (a) all Claims against the Debtors that result from the Debtors' rejection of an executory contract or unexpired lease, (b) disputes regarding the amount of any Cure pursuant to section 365 of the Bankruptcy Code, and (c) Claims that the Debtors seek to have determined by the Bankruptcy Court, shall in all cases be determined by the Bankruptcy Court.  From and after the Effective Date, the Reorganized Debtors may satisfy, dispute, settle, or otherwise compromise any Claim without approval of the Bankruptcy Court.

## 7.2     Objections to Claims

Except insofar as a Claim is Allowed under the Plan, the Debtors, the Reorganized Debtors, or any other party in interest shall be entitled to object to Claims.  Any objections to Claims shall be served and filed (a) on or before the ninetieth (90th) day following the later of (i) the Effective Date and (ii) the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim, or (b) such later date as ordered by the Bankruptcy Court upon motion filed by the Debtors or Reorganized Debtors.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Section 4.17 of the Plan.

## 7.3     No Distribution Pending Allowance

If an objection to a Claim is deemed, as set forth in Section 7.1, or filed, as set forth in Section 7.2, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

## 7.4     Distribution After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Distribution Agent shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of the such Claim unless required under applicable bankruptcy law.

## 7.5     No Interest

Unless otherwise specifically provided for herein or by order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim or right.  Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

## 7.6     Disallowance of Claims

All Claims and Interests of any Entity from which property is sought by the Debtors under sections 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Reorganized Debtors allege is a transferee of a transfer that is avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if:  (a) the Entity, on the one hand, and the Debtors or the Reorganized Debtors, as applicable, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turn over any property or monies under any of the aforementioned sections of the Bankruptcy Code; and (b) such Entity or transferee has failed to turn over such property by the date set forth in such agreement or Final Order.

# ARTICLE VIII

# EFFECT OF CONFIRMATION OF THE PLAN

**8.1**     **Discharge of Claims and Termination of Interests**

Except as otherwise provided for herein, effective as of the Effective Date: (a) the rights afforded in the Plan and the treatment of Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of Claims and Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors or any of their assets, property, or Estates; (b) the Plan shall bind all holders of Claims and Interests, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the Reorganized Debtors, their successors and assigns, and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

**8.2**     **Releases by the Debtors**

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, and to the extent permitted by applicable law, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions (but excluding Avoidance Action brought as counterclaims or defenses to Claims asserted against the Debtors), the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the DIP Facility, the DIP L/C Facility, the DIP Loan Documents, the DIP L/C Facility Documents, the Exit Credit Facilities, the Exit Credit Facilities Documents, the Chapter 11 Cases, the prepetition negotiation and settlement of Claims, the filing of the Chapter 11 Cases, solicitation of the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (b) any individual from any claim related to an act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made

after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

**8.3**      **Releases by Holders of Claims and Interests**

Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, and to the extent permitted by applicable law, each Releasing Party, to the fullest extent allowed by applicable law, is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the DIP Facility, the DIP L/C Facility, the DIP Loan Documents, the DIP L/C Facility Documents, the Exit Credit Facilities, the Exit Credit Facilities Documents, the Chapter 11 Cases, the prepetition negotiation and settlement of Claims, the filing of the Chapter 11 Cases, solicitation of the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, (b) any individual from any claim related to an act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct, or (c) obligations under the First Lien Credit Agreement and the Second Lien Credit Agreement which by their express terms survive the termination of the First Lien Credit Agreement and the Second Lien Credit Agreement, including the rights of the First Lien Agent and the Second Lien Agent to expense reimbursement, indemnification and similar amounts.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to the Third-Party Release.

**8.4**      **Exculpation**

Notwithstanding anything contained herein to the contrary, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the Plan Supplement, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the

Restructuring Support Agreement, the Disclosure Statement, the Plan, the Plan Supplement, the DIP Facility, the DIP L/C Facility, the DIP Loan Documents, the DIP L/C Facility Documents, the Exit Credit Facilities, the Exit Credit Facilities Documents, the Chapter 11 Cases, the prepetition negotiation and settlement of Claims, the filing of the Chapter 11 Cases, solicitation of the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing, except for claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, gross negligence or willful misconduct, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**8.5**    **Injunction**

Except as otherwise provided herein or for obligations created or issued pursuant hereto, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to **Section 8.2** or **Section 8.3** of the Plan, discharged pursuant to **Section 8.1** of the Plan, or are subject to exculpation pursuant to **Section 8.4** of the Plan shall be permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property of such Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests discharged, released, exculpated, or settled pursuant to the Plan.

**8.6**    **Protection Against Discriminatory Treatment**

In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

**8.7**    **Release of Liens**

Except as otherwise specifically provided in the Plan, the Exit Credit Facilities Documents (including in connection with any express written amendment of any mortgage, deed of trust, Lien, pledge, or other security interest under the Exit Credit Facilities Documents), or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security

interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors, the DIP Administrative Agent, the First Lien Agent, the Second Lien Agent or any other holder of a Secured Claim.  In addition, at the sole expense of the Debtors or the Reorganized Debtors, the DIP Administrative Agent, the First Lien Agent, and the Second Lien Agent shall execute and deliver all documents reasonably requested by the Debtors, Reorganized Debtors or administrative agent(s) for the Exit Credit Facilities to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Reorganized Debtors and their designees to file UCC-3 termination statements and other release documentation (to the extent applicable) with respect thereto.

**8.8      Reimbursement or Contribution**

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever Disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as noncontingent, or (b) the relevant holder of a Claim has filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

**8.9      Recoupment**

In no event shall any holder of a Claim be entitled to recoup such Claim against any Claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of recoupment.

**8.10     Subordination Rights**

Any distributions under the Plan to holders of Claims or Interests shall be received and retained free from any obligations to hold or transfer the same to any other holder and shall not be subject to levy, garnishment, attachment, or other legal process by any holder by reason of claimed contractual subordination rights.  On the Effective Date, any such subordination rights shall be deemed waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan; provided, that any such subordination rights shall be preserved in the event the Confirmation Order is vacated, the Effective Date does not occur in accordance with the terms hereunder or the Plan is revoked or withdrawn.

**ARTICLE IX**

**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

**9.1      Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Section 9.2 of the Plan:

(a)      the Professional Fee Escrow Account shall have been established and funded with the Professional Fee Amount;

(b)      the DIP Orders shall have been entered by the Bankruptcy Court, and shall not have been stayed or modified or vacated;

(c)      (i) the Confirmation Order shall have been entered by the Bankruptcy Court and (ii) such order shall have become a Final Order that has not been stayed or modified or vacated;

(d)      the Debtors shall not be in default under the DIP Facility, the DIP L/C Facility or the DIP Orders (or, to the extent that the Debtors are in default on the proposed Effective Date, such default shall have been waived by the DIP Lenders or cured by the Debtors in a manner consistent with the DIP Facility, the DIP L/C Facility and the DIP Orders);

(e)      the Exit Credit Facilities Documents shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the consummation of the Exit Credit Facilities shall have been waived or satisfied in accordance with the terms thereof, and the closing of the Exit Credit Facilities shall be deemed to occur concurrently with the occurrence of the Effective Date;

(f)      (i) the Definitive Documents shall have satisfied the RSA Definitive Document Requirements; (ii) in addition to the RSA Definitive Document Requirements applicable to the Exit Credit Facilities Documents, the Exit Credit Facilities Documents also shall be in form and substance reasonably satisfactory to the Exit Credit Facilities Administrative Agent and Exit L/C Issuer (in each case solely with respect to the provisions thereof that affect the rights and duties of the Exit Credit Facilities Administrative Agent or Exit L/C Issuer, as applicable), and (iii) the Exit L/C Facility Documents shall be in form and substance reasonably satisfactory to the Exit L/C Issuer and the Required First Lien Lenders;

(g)      all conditions precedent to the issuance of the New Common Stock, including the Exit Commitment Equity, and the Warrants (and the automatic issuance of the New Common Stock, including the Exit Commitment Equity, and the Warrants on the Effective Date), other than any conditions related to the occurrence of the Effective Date, shall have occurred;

(h)      all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the consummation of the New Stockholders' Agreement and the Warrant Agreement shall have been waived or satisfied in accordance with the terms thereof, and the closing of the New Stockholders' Agreement and the Warrant Agreement shall be deemed to occur concurrently with the occurrence of the Effective Date;

(i)      to the extent required under applicable non-bankruptcy law, the New Organizational Documents shall have been duly filed with the applicable authorities in the relevant jurisdictions;

(j)      all governmental and material third party approvals and consents, including Bankruptcy Court approval, that are necessary to implement the Restructuring Transactions shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

(k)      the Restructuring Support Agreement shall not have terminated as to all parties thereto and shall be in full force and effect and the Debtors and the applicable Restructuring Support Parties then party thereto shall be in compliance therewith;

(l)      all amounts payable by the Debtors pursuant to section 16 of the Restructuring Support Agreement and the DIP Orders have been satisfied in full; and

(m)      with respect to all documents and agreements necessary to implement the Plan:  (1) all conditions precedent to such documents and agreements (other than any conditions precedent related to the occurrence of the Effective Date) shall have been satisfied or waived pursuant to the terms of such documents or agreements; (2) such documents and agreements shall have been tendered for delivery to the required parties and been approved by any required parties and, to the extent required, filed with and approved by any applicable Governmental Units in accordance with applicable laws; and (3) such documents and agreements shall have been effected or executed.

**9.2**      **Waiver of Conditions Precedent**

The Debtors, with the prior written consent of the Required First Lien Lenders, Required Second Lien Lenders or Sponsor Entities, as applicable, may waive any of the conditions to the Effective Date set forth in Section 9.1 of the Plan (except for 9.1(c)(i)) at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm or consummate the Plan; provided, however, the condition in Section 9.1(f) of the Plan may be waived with respect to a particular Definitive Document only to the extent that every party that maintains a consent right over the subject Definitive Document as set forth in the Restructuring Support Agreement agrees to waive such condition with respect to the subject Definitive Document.

**9.3**      **Effect of Non-Occurrence of Conditions to Consummation**

If prior to Consummation, the Confirmation Order is vacated pursuant to a Final Order, then, except as provided in such Final Order, the Plan will be null and void in all respects, and nothing contained in the Plan, the Disclosure Statement, or the Restructuring Support Agreement shall:  (a) constitute a waiver or release of any Claims, Interests, or Causes of Action by an Entity; (b) prejudice in any manner the rights of any Debtor or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity.

**9.4**      **Substantial Consummation**

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

**ARTICLE X**

**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

**10.1**      **Modification of Plan**

Effective as of the date hereof:  (a) the Debtors reserve the right (subject to the Restructuring Support Agreement) in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein; and (b) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.  Notwithstanding anything to the contrary herein, the Debtors or the Reorganized Debtors, as applicable, shall not amend or modify the Plan in a manner inconsistent with the Restructuring Support Agreement.

**10.2**      **Effect of Confirmation on Modifications**

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation of votes thereon pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**10.3**      **Revocation or Withdrawal of Plan**

The Debtors reserve the right (subject to the Restructuring Support Agreement) to revoke or withdraw the Plan with respect to any or all Debtors before the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation or the Effective Date does not occur, then:  (a) the Plan will be null and void in all respects; (b) the Restructuring Support Agreement will be null and void in all respects; (c) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed pursuant hereto will be null and void in all

respects; and (d) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action by any Entity, (2) prejudice in any manner the rights of any Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

**ARTICLE XI**

**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim against a Debtor, including the resolution of any request for payment of any Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to Executory Contracts or Unexpired Leases, including:  (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7.      enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10.      hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including:  (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim for amounts not timely repaid pursuant to Section 6.5(a) of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation,

interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

11.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

13.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14.     enter an order or Final Decree concluding or closing the Chapter 11 Cases;

15.     enforce all orders previously entered by the Bankruptcy Court; and

16.     hear any other matter not inconsistent with the Bankruptcy Code;

provided, that, on and after the Effective Date and after the consummation of the following agreements or documents, the Bankruptcy Court shall not retain jurisdiction over matters arising out of or related to each of the Exit Credit Facilities Documents, the New Stockholders' Agreement, the New Organizational Documents, and the Warrant Agreement, and the Exit Credit Facilities Documents, the New Stockholders' Agreement, the New Organizational Documents, and the Warrant Agreement shall be governed by the respective jurisdictional provisions therein.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

### 12.1    Immediate Binding Effect

Subject to Section 9.1 hereof, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

### 12.2    Additional Documents

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, and all holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### 12.3    Payment of Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930(a) shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or a Final Decree is issued, whichever occurs first.

**12.4**     <u>**Reservation of Rights**</u>

The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests prior to the Effective Date.

**12.5**     <u>**Successors and Assigns**</u>

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**12.6**     <u>**Service of Documents**</u>

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

| | |
|---|---|
| **Reorganized Debtors** | **Answers Holdings, Inc.**<br>6665 Delmar Boulevard, Suite 3000<br>St. Louis, Missouri 63130<br>Attn:    Justin P. Schmaltz |
| **Proposed Counsel to Debtors** | **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attn:    James H.M. Sprayregen, P.C.<br>            Jonathan S. Henes, P.C.<br>            Christopher T. Greco<br>            Anthony R. Grossi<br><br>**Kirkland & Ellis LLP**<br>555 California Street<br>San Francisco, California 94104<br>Attn:    Melissa N. Koss |
| **United States Trustee** | **Office of the United States Trustee**<br>**for the Southern District of New York**<br>201 Varick Street, Suite 1006<br>New York, New York 10014<br>Attn.: ____ |
| **Counsel to the Consenting First Lien Lenders** | **Jones Day**<br>250 Vesey Street<br>New York, New York 10281<br>Attn:    Scott J. Greenberg<br>            Michael J. Cohen |
| **Counsel to the First Lien Agent** | **Gibson, Dunn & Crutcher LLP**<br>200 Park Avenue<br>New York, New York 10166 |

|                                                  | Attn:    David M. Feldman
J. Eric Wise |
|--------------------------------------------------|---------------------------------------------|

**Counsel to the Consenting Second Lien Lenders**

**Akin, Gump, Strauss, Hauer & Feld LLP**
1 Bryant Park
New York, New York 10036
Attn:    David Botter
David Simonds

**Counsel to the Second Lien Agent**

**Alston & Bird LLP**
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Attn:    Jason Solomon
David Wender

**Counsel to the Sponsor Entities**

**Simpson Thacher & Bartlett LLP**
425 Lexington Avenue
New York, New York 10017
Attn:    Elisha D. Graff
Edward R. Linden

**12.7    Term of Injunctions or Stays**

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**12.8    Entire Agreement**

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**12.9    Plan Supplement**

After any of such documents included in the Plan Supplement are filed, copies of such documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Solicitation Agent's website at www.omnimgt.com/answers or the Bankruptcy Court's website at https://www.pacer.gov/.

**12.10    Non-Severability**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' consent, consistent with the terms set forth herein; and (c) nonseverable and mutually dependent.

43

**12.11**    **Votes Solicited in Good Faith**

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of the Restructuring Support Parties and each of their respective Affiliates, agents, representatives, members, principals, equity holders (regardless of whether such interests are held directly or indirectly), officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan.

**12.12**    **Closing of Chapter 11 Cases**

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

**12.13**    **Waiver or Estoppel**

Each holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, the Restructuring Support Agreement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

Dated: February 16, 2017                    ANSWERS HOLDINGS, INC.
                                            on behalf of itself and each of its Debtor affiliates


                                            _/s/ Justin P. Schmaltz_____
                                            Justin P. Schmaltz
                                            Chief Restructuring Officer