James H.M. Sprayregen, P.C.
Jonathan S. Henes, P.C.
Christopher T. Greco
Anthony R. Grossi
John T. Weber
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

Melissa N. Koss
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500

*Proposed Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ANSWERS HOLDINGS, INC., *et al.*,[1] | ) | Case No. 17-10496 (SMB) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**NOTICE OF FILING OF PROPOSED FORM OF ORDER**
**APPROVING THE DEBTORS' DISCLOSURE STATEMENT FOR, AND**
**CONFIRMING, THE DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN**

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Answers Holdings, Inc. (4504); Answers Corporation (2855); Easy2 Technologies, Inc. (2839); ForeSee Results, Inc. (3125); ForeSee Session Replay, Inc. (2593); More Corn, LLC (6193); Multiply Media, LLC (8974); Redcan, LLC (7344); RSR Acquisition, LLC (2256); Upbolt, LLC (2839); and Webcollage Inc. (7771). The location of Debtor Webcollage Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is:  11 Times Square, 11th Floor, New York, New York 10018.

**PLEASE TAKE NOTICE** that on March 3, 2017, the above-captioned debtors (collectively, the "*Debtors*") filed the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization for Answers Holdings, Inc. and Its Debtor Affiliates* [Docket No. 16] (as may be supplemented, amended, or otherwise modified from time to time, the "*Disclosure Statement*") and the *Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization for Answers Holdings, Inc. and Its Debtor Affiliates* [Docket No. 17] (as may be supplemented, amended, or otherwise modified from time to time, the "*Plan*").

**PLEASE TAKE FURTHER NOTICE** that on March 9, 2017, the Bankruptcy Court entered an Order granting the *Motion (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures, (III) Approving the Solicitation Procedures, (IV) Approving the Combined Hearing Notice, (V) Directing that a Meeting of Creditors Not be Convened, (VI) Shortening the Notice Requirements Related Thereto, and (VII) Granting Related Relief* (the "*Scheduling Order*") [Docket No. 45].

**PLEASE TAKE FURTHER NOTICE** that as set forth in the Scheduling Order, the hearing to consider approval of the Disclosure Statement and confirmation of the Plan shall be held before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, in Courtroom 723, One Bowling Green, New York, New York on **April 4, at 2:00 p.m. (prevailing Eastern Time).**

**PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is the Debtors' proposed form of *Order Approving the Debtors' Disclosure Statement for, and Confirming, the Debtors' Joint Prepackaged Chapter 11 Plan* (the "*Proposed Confirmation Order*").

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan, the Disclosure Statement, and Proposed Confirmation Order, as well as further information regarding the Chapter 11 Cases are available for inspection free of charge by visiting the website of Rust Consulting/Omni Bankruptcy at www.omnimgt.com/Answers or by calling (844) 580-9044. You may also obtain copies of any pleadings by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank.]*

New York, New York        /s/ Christopher T. Greco
Dated:  April 2, 2017     James H.M. Sprayregen, P.C.
                          Jonathan S. Henes, P.C.
                          Christopher T. Greco
                          Anthony R. Grossi
                          John T. Weber
                          **KIRKLAND & ELLIS LLP**
                          **KIRKLAND & ELLIS INTERNATIONAL LLP**
                          601 Lexington Avenue
                          New York, New York 10022
                          Telephone:    (212) 446-4800
                          Facsimile:    (212) 446-4900

                          *- and -*

                          Melissa N. Koss
                          **KIRKLAND & ELLIS LLP**
                          **KIRKLAND & ELLIS INTERNATIONAL LLP**
                          555 California Street
                          San Francisco, California 94104
                          Telephone:    (415) 439-1400
                          Facsimile:    (415) 439-1500

                          *Proposed Counsel to the Debtors*
                          *and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Confirmation Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| | ) |
| In re: | ) Chapter 11 |
| | ) |
| ANSWERS HOLDINGS, INC., *et al.*,[1] | ) Case No. 17-10496 (SMB) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

### ORDER APPROVING THE DEBTORS'
### DISCLOSURE STATEMENT FOR, AND CONFIRMING,
### THE DEBTORS' JOINT PREPACKAGED CHAPTER 11 PLAN

The above-captioned debtors (collectively, the "***Debtors***") having:

a.    distributed, on February 16, 2017 (the "***Solicitation Date***") (i) the *Joint Prepackaged Chapter 11 Plan of Reorganization for Answers Holdings, Inc. and Its Debtor Affiliates* [Docket No. 17] (as modified, amended, or supplemented from time to time, the "***Plan***"),[2] (ii) the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization for Answers Holdings, Inc. and Its Debtor Affiliates* [Docket No. 16] (the "***Disclosure Statement***"), and (iii) ballots for voting on the Plan to holders of Claims entitled to vote on the Plan—holders of First Lien Claims (Class 3) and Second Lien Claims (Class 4)—in accordance with title 11 of the United States Code (the "***Bankruptcy Code***"), the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York (the "***Local Bankruptcy Rules***");

b.    commenced, on March 3, 2017 (the "***Petition Date***"), the Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code;

---

[1]    The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, include: Answers Holdings, Inc. (4504); Answers Corporation (2855); Easy2 Technologies, Inc. (2839); ForeSee Results, Inc. (3125); ForeSee Session Replay, Inc. (2593); More Corn, LLC (6193); Multiply Media, LLC (8974); Redcan, LLC (7344); RSR Acquisition, LLC (2256); Upbolt, LLC (2839); and Webcollage Inc. (7771).  The location of Debtor Webcollage Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is:  11 Times Square, 11th Floor, New York, New York 10018.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Plan, the Disclosure Statement, or the Bankruptcy Code, as applicable.  The rules of interpretation set forth in Section 1.2 of the Plan, other than Section 1.2(e) of the Plan, apply to the interpretation of this Confirmation Order.

c.    filed,[3] on March 3, 2017, the Plan and the Disclosure Statement;

d.    filed, on March 3, 2017, the *Debtors' Motion for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures, (III) Approving the Solicitation Procedures, (IV) Approving the Combined Hearing Notice, (V) Directing that a Meeting of Creditors Not Be Convened, (VI) Shortening the Notice Requirements Related Thereto, and (VII) Granting Related Relief* [Docket No. 18] (the "**Scheduling Motion**");

e.    filed, on March 3, 2017, the *Declaration of Justin P. Schmaltz, Chief Restructuring Officer, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 19], detailing the facts and circumstances of the Chapter 11 Cases;

f.    filed, on March 7, 2017, the *Certification of Paul H. Deutch of Rust Consulting/Omni Bankruptcy With Respect to the Solicitation and Tabulation of Votes Relating to the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 31], which detailed the results of the Plan voting process (the "**Voting Report**");

g.    filed, on March 9, 2017, the *Notice of Commencement of Chapter 11 Bankruptcy Cases of Answers Holdings, Inc. and Its Debtor Affiliates, Summary of Joint Prepackaged Chapter 11 Plan of Reorganization for Answers Holdings, Inc. and Its Debtor Affiliates, and Notice of Combined Hearing to Consider (I) the Adequacy of the Disclosure Statement and Solicitation Procedures and (II) Confirmation of the Plan or Reorganization, and Related Matters* [Docket No. 47] (the "**Confirmation Hearing Notice**"), which contained notice of the commencement of the Chapter 11 Cases, the date and time set for the hearing to consider approval of the Disclosure Statement and Confirmation of the Plan (the "**Confirmation Hearing**"), and the deadline for filing objections to the Plan and the Disclosure Statement;

h.    filed, on March 13, 2017, the *Affidavit of Service* of the Confirmation Hearing Notice [Docket No. 62] (the "**Confirmation Hearing Notice Affidavit**");

i.    published, on March 13, 2017, in *The New York Times,* as evidenced by the *Affidavit of Publication* [Docket No. 60], (together with the Confirmation Hearing Notice Affidavit, the "**Affidavits**"), the Confirmation Hearing Notice, consistent with the *Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Establishing a Plan and Disclosure Statement Objection Deadline and Related Procedures, (III) Approving the Combined Hearing Notice, (IV) Directing that a Meeting of Creditors Need Not Be Convened, (V) Shortening the Notice Requirements Related Thereto, and (VI) Granting Related Relief* [Docket No. 45] (the "**Scheduling Order**");

---

[3]    Unless otherwise indicated, use of the term "filed" in this Confirmation Order refers also to the service of the applicable document filed on the docket for Case No. 17-10496.

2

j.    filed, on March 28, 2017, the *Notice of Filing Plan Supplement* [Docket No. 84] (as modified, amended, or supplemented from time to time, the "***Plan Supplement***" and which, for purposes of the Plan and this Confirmation Order, is included in the definition of "Plan");

k.    filed, on April 2, 2017, the *Debtors' Memorandum of Law in Support of an Order Approving the Debtors' Disclosure Statement for, and Confirming, the Debtors' Joint Prepackaged Chapter 11 Plan* [Docket No. 92] (the "***Confirmation Brief***"),

l.    filed, on April 2, 2017, (i) the *Declaration of Justin P. Schmaltz in Support of an Order Approving the Debtors' Disclosure Statement for, and Confirming, the Debtors' Joint Prepackaged Chapter 11 Plan* (the "***Schmaltz Declaration***") and (ii) the *Declaration of Stephen J. Antinelli in Support of an Order Approving the Debtors' Disclosure Statement for, and Confirming, the Debtors' Joint Prepackaged Chapter 11 Plan* (the "***Antinelli Declaration***") (together with the Schmaltz Declaration, the "***Declarations***"); and

m.    operated their businesses and managed their properties during the Chapter 11 Cases as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

The Court having:

a.    entered, on March 9, 2017, the Scheduling Order;

b.    set April 4, 2017, at 2:00 p.m. (prevailing Eastern Time), as the date and time for the Confirmation Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code, as set forth in the Scheduling Order;

c.    reviewed the Plan, the Disclosure Statement, the Scheduling Motion, the Plan Supplement, the Confirmation Brief, the Declarations, the Voting Report, the Confirmation Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding approval of the Disclosure Statement and Confirmation, including all objections, statements, and reservations of rights;

d.    held the Confirmation Hearing;

e.    heard the statements and arguments made by counsel with respect to the approval of the remaining relief requested in the Scheduling Motion, including the approval of the solicitation procedures set forth in Article II of the Disclosure Statement as well as the instructions contain in the ballots (the "***Ballots***"),[4] provided to holders of First Lien Claims and holders of Second Lien Claims (the "***Solicitation Procedures***"), the Voting Record Date, and the Voting Deadline;

---

[4]    The forms of the Ballots are attached as Exhibit 1 and Exhibit 2 to Exhibit A to the Scheduling Motion.

f.    heard the statements and arguments made by counsel in respect of approval of the Disclosure Statement and Confirmation;

g.    considered all oral representations, testimony, documents, filings, and other evidence regarding approval of the Disclosure Statement and Confirmation; and

h.    taken judicial notice of all pleadings and other documents filed, all orders entered, and all evidence and arguments presented in the Chapter 11 Cases.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and Confirmation and other evidence presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Court makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

### A.    Findings and Conclusions

1.    The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

### B.    Jurisdiction, Venue, and Core Proceeding

2.    The Court has jurisdiction over the Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code.  The Court has exclusive jurisdiction to determine

4

whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively. Venue is proper in this District pursuant to sections 1408 and 1409 of title 28 of the United States Code. Approval of the Disclosure Statement, including associated Solicitation Procedures, and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of title 28 of the United States Code.

### C.    Eligibility for Relief

3.    The Debtors were and are entities eligible for relief under section 109 of the Bankruptcy Code.

### D.    Commencement and Joint Administration of the Chapter 11 Cases

4.    On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. In accordance with the *Order Directing Joint Administration of the Debtors' Chapter 11 Cases* [Docket No. 43], the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015. Since the Petition Date, the Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases. No committee has been appointed pursuant to section 1102 of the Bankruptcy Code in the Chapter 11 Cases.

### E.    Burden of Proof—Confirmation of the Plan

5.    The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation. In addition, and

5

to the extent applicable, the Plan is confirmable under the clear and convincing evidentiary standard.

### F.    Notice

6.      As evidenced by the Affidavits, due, adequate, and sufficient notice of the Disclosure Statement, the Plan, and the Confirmation Hearing, together with all deadlines for voting to accept or reject the Plan as well as objecting to the Disclosure Statement and the Plan, has been provided to: (a) the U.S. Trustee, (b) the entities listed on the Consolidated List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the First Lien Agent; (d) counsel to the Ad Hoc First Lien Group; (e) counsel to the Second Lien Agent; (f) counsel to the Ad Hoc Second Lien Group; (g) counsel to the Sponsor Entities; (h) the United States Attorney for the Southern District of New York; (i) the United States Securities and Exchange Commission; (j) the state attorneys general for each state in which the Debtors conduct business; (k) the Internal Revenue Service; (l) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the parties identified in clauses (a) through (l), collectively, the "*Core Notice Parties*"); and (m) all parties in interest listed on the Debtors' creditor matrix.  Given the expedited nature of the Chapter 11 Cases, the Debtors have gone to great lengths to ensure that all parties in interest received sufficient due process.  As a direct result of these efforts, 100% of impaired creditors have either:  (a) actually cast a vote on the Plan (either to accept or reject); or (b) received actual notice of the Disclosure Statement and Plan and provided no indication that they object to confirmation of the Plan.  Further, the Confirmation Hearing Notice was published in *The New York Times* on March 13, 2017 in compliance with the Scheduling Order and Bankruptcy Rule 2002(l).  Such notice was adequate and sufficient under the facts and circumstances of the Chapter 11 Cases pursuant to

section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002 and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

### G.    Disclosure Statement

7.    The Disclosure Statement contains (a) sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and regulations, including the Securities Act (to the extent applicable), and (b) "adequate information" (as such term is defined in section 1125(a) of the Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.  The filing of the Disclosure Statement with the clerk of the Court satisfied Bankruptcy Rule 3016(b).

### H.    Ballots

8.    The classes of Claims entitled under the Plan to vote to accept or reject the Plan (the "*Voting Classes*") are set forth below:

| Class | Designation |
|-------|-------------|
| 3 | First Lien Claims |
| 4 | Second Lien Claims |

9.    The Ballots the Debtors used to solicit votes to accept or reject the Plan from holders in the Voting Classes adequately addressed the particular needs of the Chapter 11 Cases and were appropriate for holders in the Voting Classes to vote to accept or reject the Plan, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable rules, laws, and regulations.

### I.    Solicitation

10.    The solicitation of votes on the Plan complied with the Solicitation Procedures, as described in the Voting Report, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the

7

Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable rules, laws, and regulations, including the registration requirements under the Securities Act (to the extent applicable).

11.     As described in the Voting Report and the Declarations, as applicable, prior to the Petition Date, the Plan, the Disclosure Statement, and the Ballots (collectively, the "***Solicitation Packages***"), and, following the Petition Date, the Confirmation Hearing Notice, were transmitted and served, including to all holders in the Voting Classes, in compliance with the Bankruptcy Code, including sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Bankruptcy Rules, the Scheduling Order, and any applicable nonbankruptcy law.   Additionally, the Confirmation Hearing Notice was also served on the Debtors' entire creditor matrix on March 9, 2017.[5]   Transmission and service of the Solicitation Packages and the Confirmation Hearing Notice were timely, adequate, and sufficient under the facts and circumstances of the Chapter 11 Cases.  No further notice is required.

12.     As set forth in the Voting Report, the Solicitation Packages were distributed to holders in the Voting Classes that held a Claim as of February 7, 2017 (the date specified in such documents for the purpose of the solicitation).   The establishment and notice of the Voting Record Date were reasonable and sufficient.

13.     The 14-day period during which the Debtors solicited acceptances or rejections to the Plan was a reasonable and sufficient period of time for holders in the Voting Classes to make an informed decision to accept or reject the Plan and complied with the Amended Procedural Guidelines for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the

---

[5]     *See* Confirmation Hearing Notice Affidavit.

Southern District of New York, as amended, effective March 6, 2013 (as adopted by General Order M-387) (the "***Guidelines***").

14.    Under section 1126(f) of the Bankruptcy Code, holders of Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 5 (General Unsecured Claims), and Class 7 (Intercompany Interests) (collectively, the "***Deemed Accepting Classes***") are Unimpaired and conclusively presumed to have accepted the Plan.  Also, the Debtors were not required to solicit votes from the holders of Interests in Class 8 (Interests in Holdings) which were deemed to reject the Plan (the "***Deemed Rejecting Class***").  Holders of Claims in Class 6 (Intercompany Claims) are Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated) or are Impaired and deemed to reject the Plan (to the extent cancelled), and, in either event, are not entitled to vote to accept or reject the Plan (collectively with the Deemed Accepting Classes and the Deemed Rejecting Class, the "***Non-Voting Classes***").  Nevertheless, the Debtors served holders in the Non-Voting Classes with the Confirmation Hearing Notice.[6]

### J.    Voting

15.    As evidenced by the Voting Report, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Disclosure Statement, and any applicable nonbankruptcy law, rule, or regulation.

### K.    Plan Supplement

16.    The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan and the Restructuring Support

---

[6]    *See* Confirmation Hearing Notice Affidavit.

Agreement, and only consistent therewith, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date.  The Core Notice Parties and holders of Claims and Interests were provided due, adequate, and sufficient notice of the Plan Supplement in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and no further notice is required.[7]

### L.    Compliance with Bankruptcy Code Requirements—Section 1129(a)(1)

17.    The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

### (i)    Proper Classification—Sections 1122 and 1123

18.    The Plan satisfies the requirements of sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.  Article III of the Plan provides for the separate classification of Claims and Interests into eight (8) classes.  Valid business, factual, and legal reasons exist for the separate classification of such classes of Claims and Interests.  The classifications reflect no improper purpose and do not unfairly discriminate between, or among, holders of Claims or Interests. Each class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that class.

### (ii)    Specified Unimpaired Classes—Section 1123(a)(2)

19.    The Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code. Article III of the Plan specifies that Claims, as applicable, in the following classes (the "*Unimpaired Classes*") are not impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code:

---

[7]    *See Certificate of Service* [Docket No. 89].

| Class | Designation |
|---|---|
| 1 | Other Secured Claims |
| 2 | Other Priority Claims |
| 5 | General Unsecured Claims |
| 6 | Intercompany Claims (to the extent reinstated) |
| 7 | Intercompany Interests |

20.    Additionally, Article II of the Plan specifies that Allowed Administrative Claims, DIP Claims, Professional Claims, and Priority Tax Claims will be paid in full in accordance with the terms of the Plan, although these Claims are not classified under the Plan.

### (iii)    Specified Treatment of Impaired Classes—Section 1123(a)(3)

21.    The Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims and Interests, as applicable, in the following classes (the "***Impaired Classes***") are impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, and describes the treatment of such classes:

| Class | Designation |
|---|---|
| 3 | First Lien Claims |
| 4 | Second Lien Claims |
| 6 | Intercompany Claims (to the extent cancelled) |
| 8 | Interests in Holdings |

### (iv)    No Discrimination—Section 1123(a)(4)

22.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest.

### (v)    Adequate Means for Plan Implementation—Section 1123(a)(5)

23.    The Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code. The provisions of Article IV and elsewhere in the Plan, and the exhibits and attachments to the Plan, the Plan Supplement, and the Disclosure Statement, provide, in detail, adequate and proper

11

means for the Plan's implementation, including, among other things: (a) the issuance and distribution of the New Common Stock (including the Exit Commitment Equity and the MIP Equity (to the extent applicable)) and the Warrants; (b) the Reorganized Debtors' entry into the Exit Credit Facilities; (c) authorization of the Debtors and/or Reorganized Debtors to take all actions necessary to effectuate the Plan, including those actions necessary to effect the Restructuring Transactions; (d) authorization and adoption and implementation of the Management Incentive Plan; (e) authorization of the adoption of, and entry into, the New Organizational Documents, the New Stockholders' Agreement, and the Warrant Agreement; (f) cancellation of instruments, Certificates, and other documents; (g) settlement of Claims and Interests; (h) vesting of the Estates' assets in the Reorganized Debtors; and (i) the appointment of the members of the New Board and the officers, directors, and/or managers of each of the Reorganized Debtors.

### (vi)    Voting Power of Equity Securities—Section 1123(a)(6)

24.    Pursuant to and only to the extent required by Section 1123(a)(6) of the Bankruptcy Code, Section 4.11 of the Plan and the New Organizational Documents prohibit the issuance of non-voting securities and provide for an appropriate distribution of voting power if additional classes of securities possessing such power are issued.  As such, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

### (vii)    Directors and Officers—Section 1123(a)(7)

25.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. In accordance with Section 4.14 of the Plan, the members of the New Board and the New OpCo Boards known and determined have been identified as part of the Plan Supplement consistent with section 1129(a)(5) of the Bankruptcy Code.  On the Effective Date, except as otherwise provided in the Plan Supplement or announced on the record at the Confirmation Hearing, the

12

existing officers of the Debtors (other than the Chief Restructuring Officer and Chief Financial Officer) shall serve in their current capacities for the Reorganized Debtors.[8]  The selection of the members of the New Board and the New OpCo Boards is consistent with the interests of all holders of Claims and Interests and public policy.

### (viii)    Impairment / Unimpairment of Classes—Section 1123(b)(1)

26.    The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Article III of the Plan impairs or leaves Unimpaired each class of Claims and Interests.

### (ix)    Assumption—Section 1123(b)(2)

27.    The Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.  Article V of the Plan provides for the assumption of the Debtors' Executory Contracts and Unexpired Leases and the payment of Cures, if any, related thereto, unless such Executory Contract or Unexpired Lease (a) was previously assumed or rejected; (b) was previously expired or terminated pursuant to its own terms; (c) is the subject of a motion or notice to assume or assume and assign Filed on or before the Confirmation Date; or (d) is designated specifically, or by category, as an Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases.  The assumption of Executory Contracts and Unexpired Leases may include the assignment of certain of such contracts to Affiliates.

### (x)    Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action—Section 1123(b)(3)

28.    The Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.  In accordance with section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the distributions, settlements, and other benefits provided under the Plan, except

---

[8]    As set forth in the Plan Supplement, Mr. Brian Mulligan shall resign, as of the Effective Date, from the position of the Debtors Chief Financial Officer and shall be the acting Chief Financial Officer of Reorganized Holdings and retained by Reorganized Holdings pursuant to a consulting agreement.

as stated otherwise in the Plan, the provisions of the Plan constitute a good-faith compromise of all Claims, Interests, and controversies relating to the contractual, subordination, and other legal rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. The compromise and settlement of such Claims and Interests embodied in the Plan and reinstatement and unimpairment of other classes identified in the Plan are in the best interests of the Debtors, the Estates, and all holders of Claims and Interests, and are fair, equitable, and reasonable.

29.     Section 8.2 of the Plan describes certain releases granted by the Debtors (the "**Debtor Release**"). The Debtors have satisfied the business judgment standard with respect to the propriety of the Debtor Release. Such releases are a necessary and integral element of the Plan, and are fair, reasonable, and in the best interests of the Debtors, the Estates, and all holders of Claims and Interests. Also, the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

30.     Section 8.3 of the Plan describes certain releases granted by the Releasing Parties (the "**Third-Party Release**"). The Third-Party Release provides finality for the Debtors, the Reorganized Debtors, and the Released Parties regarding the parties' respective obligations under the Plan and with respect to the Reorganized Debtors. The Confirmation Hearing Notice sent to holders of Claims and Interests and published in *The New York Times* on March 13, 2017, and the Ballots sent to all holders of Claims entitled to vote on the Plan, in each case,

14

unambiguously stated that the Plan contains the Third-Party Release and that holders of Claims could elect to opt out of such Third-Party Release. Such release is a necessary and integral element of the Plan, and is fair, equitable, reasonable, and in the best interests of the Debtors, the Estates, and all holders of Claims and Interests. Also, the Third-Party Release provided by the Restructuring Support Parties and other Releasing Parties is: (a) consensual; (b) essential to the confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good faith settlement and compromise of the Claims released by the Third-Party Release; (e) in the best interests of the Debtors and their Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

31.    As to the Deemed Accepting Classes, the Released Parties have provided substantial consideration in exchange for the Third-Party Release. Furthermore, the Third-Party Release is an integral and necessary part of the Plan. Without the Third-Party Release (a) the Debtors would not have been able to obtain the substantial contributions and concessions made by the Released Parties, (b) the Debtors would not have had the ability to effectuate the value-maximizing prepackaged chapter 11 plan in a timely and cost-effective manner, and (c) there is a substantial likelihood that holders of General Unsecured Claims would not have received any recovery, as compared to such Claims' Unimpaired treatment under the Plan. As to the Deemed Accepting Classes, the Third-Party Release is: (a) in exchange for good and valuable consideration provided by the Released Parties; (b) a good-faith compromise and settlement of the Claims and Causes of Actions released by the Debtors and third-parties; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and

reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Releasing Parties that would have been legally entitled to assert any Claim or Cause of Action released under the Third-Party Release.

32.     The exculpation, described in Section 8.4 of the Plan (the "***Exculpation***"), is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good-faith, arm's-length negotiations with key constituents, and is appropriately limited in scope.  Without limiting anything in the Exculpation, each Exculpated Party has participated in the Chapter 11 Cases in good faith and is appropriately released and exculpated from any obligation, Cause of Action, or liability for any prepetition or postpetition act taken or omitted to be taken in connection with, relating to, or arising out of the Debtors' restructuring efforts, the Restructuring Support Agreement, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement or the Plan or any contract, instrument, release, or other agreement or document created or entered into, in connection with, or pursuant to the Restructuring Support Agreement, the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, or the distribution of property under the Plan.  The Exculpation, including its carve-out for actual fraud, gross negligence or willful misconduct, is consistent with the Bankruptcy Code and established practice in this jurisdiction and others.

33.     The injunction provision set forth in Section 8.5 of the Plan is necessary to implement, preserve, and enforce the Debtors' discharge, the Debtor Release, the Third-Party Release, and the Exculpation, and is narrowly tailored to achieve this purpose.

16

34.    Section 4.17 of the Plan appropriately provides that the Reorganized Debtors will retain, and may enforce, all rights to commence and pursue, as appropriate, any and all Causes of Action except for Causes of Action that have been expressly waived, relinquished, exculpated, released, compromised, settled, or otherwise released as provided in Article VIII of the Plan, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.  The provisions regarding the preservation of Causes of Action in the Plan, including the Plan Supplement, are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and holders of Claims and Interests.

35.    The release and discharge of all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates described in Section 8.7 of the Plan (the "*Lien Release*") is necessary to implement the Plan.  The provisions of the Lien Release are appropriate, fair, equitable, and reasonable and are in the best interests of the Debtors, the Estates, and holders of Claims and Interests.

**(xi)    Additional Plan Provisions—Section 1123(b)(6)**

36.    The other discretionary provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

**M.    Debtor Compliance with the Bankruptcy Code—Section 1129(a)(2)**

37.    The Debtors have complied with the applicable provisions of the Bankruptcy Code and, thus, satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  Specifically, each Debtor:

a.    is an eligible debtor under section 109 of the Bankruptcy Code, and a proper proponent of the Plan under section 1121(a), of the Bankruptcy Code;

17

b.  has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court; and

c.  complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Bankruptcy Rules, any applicable nonbankruptcy law, rule and regulation, the Scheduling Order, and all other applicable law, in transmitting the Solicitation Packages, and related documents and notices, and in soliciting and tabulating the votes on the Plan.

**N.    Plan Proposed in Good Faith—Section 1129(a)(3)**

38.    The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan in good faith and not by any means forbidden by law.  In so determining, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan, the Restructuring Support Agreement, the process leading to Confirmation, including the overwhelming support of holders of Claims and Interests for the Plan, and the transactions to be implemented pursuant thereto.  The Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to implement the Restructuring Transactions, reorganize, and emerge from bankruptcy with a capital and organizational structure that will allow them to conduct their businesses and satisfy their obligations with sufficient liquidity and capital resources.

**O.    Payment for Services or Costs and Expenses—Section 1129(a)(4)**

39.    The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**P.    Directors, Officers, and Insiders—Section 1129(a)(5)**

40.    The Debtors have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.    Section 4.14 of the Plan, in conjunction with Exhibit G of the Plan

18

Supplement, disclose the identity and affiliations of the individuals proposed to serve as the initial directors, officers and other executives of the Reorganized Debtors, and the identity and nature of any compensation for any insider who will be employed or retained by the Reorganized Debtors. The proposed directors and officers for the Reorganized Debtors are qualified, and the appointments to, or continuance in, such offices by the proposed directors and officers is consistent with the interests of the holders of Claims and Interests and with public policy.

### Q.    No Rate Changes—Section 1129(a)(6)

41.    Section 1129(a)(6) of the Bankruptcy Code is not applicable to the Chapter 11 Cases. The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

### R.    Best Interest of Creditors—Section 1129(a)(7)

42.    The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis attached to the Disclosure Statement and the other evidence related thereto in support of the Plan that was proffered or adduced in the Declarations or at, prior to, or in connection with the Confirmation Hearing: (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that holders of Allowed Claims and Interests in each class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

### S.    Acceptance by Certain Classes—Section 1129(a)(8)

43.    Classes 1, 2, 5 and 7 constitute Unimpaired Classes, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.

The Voting Classes (Classes 3 and 4) have each voted to accept the Plan. Class 6 is Unimpaired and conclusively presumed to have accepted the Plan (to the extent reinstated) or is Impaired and deemed to reject the Plan (to the extent cancelled), and, in either event, are not entitled to vote to accept or reject the Plan. However, holders of Interests in Class 8 will receive no recovery on account of their Interests pursuant to the Plan and are deemed to have rejected the Plan. Notwithstanding the foregoing, the Plan is confirmable because it satisfies sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.

**T.**     **Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code—Section 1129(a)(9)**

44.     The treatment of Administrative Claims, DIP Claims, Professional Claims, and Priority Tax Claims, under Article II of the Plan, and of Other Priority Claims under Article III of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**U.**     **Acceptance by At Least One Impaired Class—Section 1129(a)(10)**

45.     The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As evidenced by the Voting Report, the Voting Classes, each of which is impaired, voted to accept the Plan by the requisite numbers and amounts of Claims and Interests, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), specified under the Bankruptcy Code.

**V.**     **Feasibility—Section 1129(a)(11)**

46.     The Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The financial projections attached to the Disclosure Statement and the other evidence supporting Confirmation proffered or adduced by the Debtors at, or prior to, or in the Declarations filed in connection with, the Confirmation Hearing: (a) are reasonable, persuasive,

credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan; and (e) establish that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

### W.    Payment of Fees—Section 1129(a)(12)

47.    The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  Section 2.5 of the Plan provides for the payment of all fees payable by the Debtors under 28 U.S.C. § 1930(a).

### X.    Continuation of Employee Benefits—Section 1129(a)(13)

48.    The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.  Section 4.15 of the Plan provides that from and after the Effective Date, the payment of all retiree benefits, as defined in section 1114 of the Bankruptcy Code, will continue in accordance with applicable law.

### Y.    Non-Applicability of Certain Sections—Sections 1129(a)(14), (15), and (16)

49.    Sections 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.  The Debtors owe no domestic support obligations, are not individuals, and are not nonprofit corporations.

### Z.    "Cram Down" Requirements—Section 1129(b)

50.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Class has been deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code.  *First*, all of the

requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8) have been met. *Second*, the Plan is fair and equitable with respect to the Deemed Rejecting Class. The Plan has been proposed in good faith, is reasonable and meets the requirements that (a) no holder of any Claim or Interest that is junior to the Deemed Rejecting Class will receive or retain any property under the Plan on account of such junior Claim or Interest and (b) no holder of a Claim or Interest in a class senior to the Deemed Rejecting Class is receiving more than 100% on account of its Claim. Accordingly, the Plan is fair and equitable to all holders of Claims and Interests in the Deemed Rejecting Class. *Third*, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Class because similarly situated creditors will receive substantially similar treatment on account of their Claims and Interests irrespective of class. The Plan may therefore be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan. Section 1129(b) of the Bankruptcy Code does not apply to the holders of First Lien Claims or the holders of Second Lien Claims because the holders of such Claims have voted to accept the Plan in sufficient number and in sufficient amount to constitute accepting classes under the Bankruptcy Code.

### AA.    Only One Plan—Section 1129(c)

51.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code. The Plan is the only chapter 11 plan filed in each of the Chapter 11 Cases.

### BB.    Principal Purpose of the Plan—Section 1129(d)

52.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

22

**CC.    Good Faith Solicitation—Section 1125(e)**

53.    The Debtors and each of the Restructuring Support Parties, and each of their respective Affiliates, agents, representatives, members, principals, equity holders (regardless of whether such interests are held directly or indirectly), officers, directors, managers, employees, advisors, and attorneys have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support of the Plan and Consummation, including the execution, delivery, and performance of the Restructuring Support Agreement, the extension of financing (as applicable) under the DIP Facility and pursuant to the DIP Loan Documents, and the Exit Credit Facilities Documents, and solicitation of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**DD.    Satisfaction of Confirmation Requirements**

54.    Based on the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**EE.    Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

55.    Each of the conditions precedent to the Effective Date, as set forth in Section 9.1 of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Section 9.2 of the Plan.

**FF.    Implementation**

56.    All documents necessary to implement the Plan and all other relevant and necessary documents (the Definitive Documents) have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and shall not be deemed to be in conflict with any federal or state law.

23

### GG.    Disclosure of Facts

57.    The Debtors have disclosed all material facts regarding the Plan, including with respect to consummation of the Exit Credit Facilities Documents, the New Organizational Documents, the New Stockholders' Agreement, and the Warrant Agreement and the fact that each applicable Debtor will emerge from its chapter 11 case as a validly existing limited liability company, partnership, or other form, as applicable, with separate assets, liabilities, and obligations.

### HH.    Good Faith

58.    The Debtors, the Released Parties, and the Releasing Parties have been and are acting in good faith if they proceed to:  (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order to reorganize the Debtors' businesses and effect the Exit Credit Facilities Documents, the New Organizational Documents, the New Stockholders' Agreement, the Warrant Agreement, and the other Restructuring Transactions.

### II.    Essential Element of the Plan

59.    The First Lien Exit Facility, Second Lien Exit Facility, and the Exit L/C Facility are essential elements of the Plan, and entry into the Exit Credit Facilities Documents is in the best interests of the Debtors, their Estates, and their creditors.  The Debtors have exercised sound business judgment in deciding to enter into the First Lien Exit Facility, Second Lien Exit Facility, and the Exit L/C Facility and have provided adequate notice thereof.  The First Lien Exit Facility, Second Lien Exit Facility, and Exit L/C Facility have been negotiated in good faith and at arm's length among the Debtors and the lenders thereto, and any credit extended and loans made to the Reorganized Debtors pursuant to the First Lien Exit Facility, Second Lien Exit

24

Facility, and the Exit L/C Facility, as applicable, and any fees paid thereunder are deemed to have been extended, issued, and made in good faith.

## ORDER

IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

60.     **Disclosure Statement.**  The Disclosure Statement is approved in all respects.

61.     **Ballots.**  The Ballots are approved.

62.     **Solicitation Procedures.**  The Solicitation Procedures satisfy the requirements of the Bankruptcy Code and the Bankruptcy Rules and are approved.

63.     **Tabulation Procedures.**  The procedures used for tabulations of votes to accept or reject the Plan as set forth in the Disclosure Statement, the Solicitation Procedures, the Voting Report, and the Ballots are approved.

64.     **Confirmation of the Plan.**  The Plan, including the Plan Supplement is approved and CONFIRMED under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

65.     **Objections.**   All objections and all reservations of rights pertaining to Confirmation or approval of the Disclosure Statement that have not been withdrawn, waived, or settled are overruled on the merits.

66.     **No Action Required.**  Pursuant to the appropriate provisions of the New York Business Corporation Law, the General Corporation Law of the State of Delaware (including section 303 thereof and the comparable provisions of the Delaware Limited Liability Company Act), section 1142(b) of the Bankruptcy Code, or other applicable law, this Confirmation Order shall constitute authorization for the Debtors or the Reorganized Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, the

25

Definitive Documents, this Confirmation Order, and any contract, instrument, or other document

to be executed, delivered, adopted, or amended in connection with the implementation of the

Plan, including the Exit Credit Facilities Documents, the New Organizational Documents, the

New Stockholders' Agreement, the Warrant Agreement, and the appointment and election of the

members of the New Board and the officers, directors, and/or managers of each of the

Reorganized Debtors.

67.    **Binding Effect.**  Upon the occurrence of the Effective Date, the terms of the Plan

are immediately effective and enforceable and deemed binding on the Debtors, the Reorganized

Debtors, and any and all holders of Claims or Interests (regardless of whether such holders of

Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to

or are subject to the settlements, compromises, releases, discharges, and injunctions described in

the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to

Executory Contracts and Unexpired Leases with the Debtors.  The Plan and this Confirmation

Order, and all prior orders of the Court in the Chapter 11 Cases shall be binding against and

binding upon and shall not be subject to rejection or avoidance by any Chapter 7 or Chapter 11

trustee appointed in any of the Chapter 11 Cases.

68.    **Vesting of Assets in the Reorganized Debtors.**  Except as otherwise provided in

the Plan, this Confirmation Order, or in any agreement, instrument, or other document

incorporated in the Plan (including the Exit Credit Facilities Documents, the New Organizational

Documents, the New Stockholders' Agreement, the Warrant Agreement, and the Restructuring

Transactions Exhibit), on the Effective Date, all property in each Estate, all Causes of Action,

and any property acquired by any of the Debtors under the Plan shall vest in each respective

Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and

after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

69.    **Effectiveness of All Actions.**  All actions contemplated by the Plan, including all actions in connection with the Exit Credit Facilities Documents, the New Organizational Documents, the New Stockholders' Agreement, the Warrant Agreement, and the Restructuring Transactions Exhibit are hereby effective and authorized to be taken on, prior to, or after the Effective Date, as applicable, under this Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors, managers, members, or equity holders of the Debtors or the Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or equity holders.

70.    **Restructuring Transactions**.    The Debtors or Reorganized Debtors, as applicable, are authorized to enter into and effectuate the Restructuring Transactions, including the entry into and consummation of the transactions contemplated by the Exit Credit Facilities Documents, the New Organizational Documents, the New Stockholders' Agreement, and the Warrant Agreement and may take any actions as may be necessary or appropriate to effect a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of the Reorganized Debtors, as and to the extent provided in the Plan (including the transactions contemplated by the Restructuring Transactions Exhibit).    Any transfers of assets or equity interests effected or any obligations incurred through the Restructuring Transactions are hereby approved and shall not constitute fraudulent conveyances

or fraudulent transfers or otherwise be subject to avoidance.  Except as otherwise provided in the Plan (or the Restructuring Transactions Exhibit), each Reorganized Debtor, as applicable, shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, under the applicable law in the jurisdiction in which such applicable Debtor is incorporated or formed.

71.    In addition to, or instead of the Restructuring Transactions, the Debtors or the Reorganized Debtors, subject to the respective consent rights of the applicable Restructuring Support Parties as set forth in the Restructuring Support Agreement prior to its termination hereunder, may cause any of the Debtors or the Reorganized Debtors to engage in additional corporate restructuring transactions necessary or appropriate for the purposes of implementing the Plan, including converting corporate entities into limited liability companies, forming new entities within the corporate organizational structure of the Debtors or Reorganized Debtors, cancelling the existing equity at another of the Debtor entities and issuing new equity therefrom, consolidating, reorganizing, restructuring, merging, dissolving, liquidating or transferring assets between or among the Debtors and the Reorganized Debtors, including Reorganized Holdings. The actions to effect these transactions may include (a) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, reorganization, transfer, disposition, conversion, liquidation, or dissolution containing terms that are consistent with the terms of the Plan and such other terms to which the applicable Persons may agree; (b) on terms consistent with the terms of the Plan and having such other terms to which the applicable Persons may agree, the execution and delivery of appropriate instruments of transfer, conversion, assignment, assumption, or delegation of any asset, property, right, liability, duty, or obligation;

28

(c) pursuant to applicable state law, the filing of appropriate certificates of articles of merger, consolidation, conversion, dissolution, or change in corporate form; and (d) the taking of all other actions that the applicable Persons determine to be necessary or appropriate, including (i) making filings or recordings that may be required by applicable state law in connection with such transactions and (ii) any appropriate positions on one or more tax returns.

72.    **Cancellation of Instruments, Certificates, and Other Documents.**   On the Effective Date, except as otherwise provided herein or in the Plan, all notes, instruments, Certificates, and other instruments or documents, directly or indirectly, evidencing any Claim or Interest shall be deemed cancelled and the obligations of the Debtors or Reorganized Debtors and any non-Debtor Affiliates thereunder or in any way related thereto shall be discharged; *provided*, *however*, that notwithstanding Confirmation or the occurrence of the Effective Date, any credit document or agreement that governs the rights of the holder of a Claim or Interest shall continue in effect solely for purposes of (a) allowing holders of Allowed Claims to receive distributions under the Plan and (b) allowing and preserving the rights of the applicable Servicer, to make distributions on account of Allowed Claims, as provided in the Plan or this Confirmation Order.

73.    **Distributions.**   The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety.  The Distribution Agent shall make all distributions required under the Plan, except that with respect to distributions to holders of Allowed Claims governed by a separate agreement, which shall include the DIP Facility, the DIP L/C Facility, the First Lien Credit Agreement, and the Second Lien Credit Agreement, and administered by a Servicer, including the DIP Administrative Agent, the First Lien Agent, and the Second Lien Agent, the Distribution Agent, the Debtor, and the applicable Servicer and the

Ad Hoc First Lien Group and Ad Hoc Second Lien Group, as applicable, shall exercise commercially reasonable efforts to implement appropriate mechanics governing such distributions in accordance with the Plan and the terms of the governing agreement.  Except as otherwise provided in the Plan, holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

74.    **Preservation of Rights of Action.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors or the Reorganized Debtors, as applicable, retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, as set forth in the Plan.    The Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  For the avoidance of doubt, the Debtors' failure to list any Causes of Action in the Disclosure Statement, the Plan, the Plan Supplement, or otherwise in no way limits the rights of the Reorganized Debtors as set forth above.   No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it.

75.    **Subordination.**   Except as otherwise expressly provided in the Plan, this Confirmation Order, and any other order of the Court:  (a) the classification and manner of satisfying all Claims and Interests under the Plan takes into consideration all subordination

rights, whether arising by contract or under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise; (b) all subordination rights that a holder of a Claim or Interest may have with respect to any distribution to be made under the Plan, including any subordination rights or lien priority rights between the holders of First Lien Claims and the holders of Second Lien Claims, shall be discharged and terminated and all actions related to the enforcement of such subordination rights shall be enjoined permanently; and (c) the distributions under the Plan to the holders of Allowed Claims and Interests will not be subject to payment of a beneficiary of such subordination rights, including any subordination rights or lien priority rights between the holders of First Lien Claims and the holders of Second Lien Claims, or to levy, garnishment, attachment, or other legal process by a beneficiary of such terminated subordination rights.

76.    **Release of Liens.**  Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Credit Facilities Documents, or any other document executed in connection therewith, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns. Without limiting the foregoing, to the extent that any holder of a Secured Claim that has been satisfied or discharged pursuant to the Plan, or any agent for such holder, has filed or recorded any Liens and/or security interests to secure such holder's Secured Claim, then as soon as practicable on or after the Effective Date, such holder (or any such agent for such holder) shall be authorized to and shall execute such documents as may be reasonably requested by the

31

Debtors or any of the Reorganized Debtors, at the sole expense of the Debtors or the Reorganized Debtors, as applicable, that are necessary to cancel and/or extinguish such Liens and/or security interests.

77.     **DIP Facility.** As of the Effective Date, and subject to the terms, conditions, and priorities set forth in the DIP Orders, the DIP Claims shall be deemed to be Allowed in the full amount due and owing under the DIP Facility and the DIP L/C Facility.  In full satisfaction of and in exchange for each DIP Claim, on the Effective Date, (a) the DIP Payments shall be paid in full in Cash and (b) each holder of the remaining DIP Claims shall receive its Pro Rata share of the First Lien Exit Loans.  Such treatment shall render each DIP Claim satisfied in full on the Effective Date, consistent with the terms of the DIP Loan Documents and the Restructuring Support Agreement.

78.     **New Common Stock and Warrants**.  All existing Interests in Holdings shall be cancelled as of the Effective Date and Reorganized Holdings (subject to the Restructuring Transactions, including as described in the Restructuring Transactions Exhibit) shall issue the New Common Stock (including the Exit Commitment Equity) and the Warrants for distribution to holders of Claims entitled to receive the New Common Stock (including the Exit Commitment Equity) and/or the Warrants, as applicable, pursuant to the Plan.  The issuance of the New Common Stock (including the Exit Commitment Equity) and the Warrants shall be authorized without the need for any further corporate action and without any further action by the Debtors or Reorganized Debtors, as applicable, or any further notice to or action, order, or approval of the Court.  The New Organizational Documents shall authorize the issuance and distribution on the Effective Date of New Common Stock (including the Exit Commitment Equity and the New Common Stock exchangeable for the Warrants (to the extent applicable)) for the benefit of

32

holders of Allowed Claims in Class 3 and Class 4 (as applicable) in accordance with the terms of the Plan. All New Common Stock (including the Exit Commitment Equity) and the Warrants issued under the Plan shall be duly authorized, validly issued, fully paid, and non-assessable, and the holders of the New Common Stock and the Warrants issued on the Effective Date shall be deemed to have accepted the terms of the New Stockholders' Agreement and the Warrant Agreement, respectively (solely in their capacity as shareholders and warrant holders of Reorganized Holdings, as applicable), and to be parties thereto without further action or signature. The New Stockholders' Agreement and the Warrant Agreement shall be effective as of the Effective Date and, as of such date, shall be deemed to be valid, binding, and enforceable in accordance with its terms.

79.    **Exit Credit Facilities.**    On the Effective Date, the Reorganized Debtors shall enter into the Exit Credit Facilities, the terms of which will be set forth in the Exit Credit Facilities Documents, as applicable. Confirmation of the Plan shall be deemed approval of the Exit Credit Facilities and the Exit Credit Facilities Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Debtors or Reorganized Debtors, as applicable, in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, including issuance of the Exit Commitment Equity to the lenders under the First Lien Exit Facility, and authorization of the Reorganized Debtors to enter into and execute the Exit Credit Facilities Documents and such other documents as may be required to effectuate the treatment afforded by the Exit Credit Facilities, and no further corporate action or any further action by the Debtors, Reorganized Debtors, or Reorganized Holdings, as applicable, and no further notice to or action, order, or approval of the Court shall be required in connection therewith. On the Effective Date,

all of the Liens and security interests to be granted in accordance with the Exit Credit Facilities Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Credit Facilities Documents, (c) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the Exit Credit Facilities Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law.

80.     The Reorganized Debtors and the persons and entities granted such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

81.     **New Organizational Documents, the New Stockholders' Agreement and the Warrant Agreement.**  The terms of the New Organizational Documents, the New Stockholders' Agreement, and the Warrant Agreement, each attached to the Plan Supplement, are approved in all respects.  The obligations of the applicable Reorganized Debtors related thereto, will, upon execution, constitute legal, valid, binding, and authorized obligations of each of the Debtors or Reorganized Debtors, as applicable, enforceable in accordance with their terms and not in

34

contravention of any state or federal law.  On the Effective Date, without any further action by the Court or the directors, officers, or equity holders of any of the Reorganized Debtors, each Reorganized Debtor, as applicable, will be and is authorized to enter into the New Organizational Documents, the New Stockholders' Agreement, and the Warrant Agreement, and all related documents, to which such Reorganized Debtor is contemplated to be a party on the Effective Date.  In addition, on the Effective Date, without any further action by the Court or the directors, officers or equity holders of any of the Reorganized Debtors, each applicable Reorganized Debtor will be and is authorized to:  (a) execute, deliver, file, and record any other contracts, assignments, certificates, instruments, agreements, guaranties, or other documents executed or delivered in connection with the New Organizational Documents, the New Stockholders' Agreement, and the Warrant Agreement; (b) perform all of its obligations under the New Organizational Documents, the New Stockholders' Agreement, and the Warrant Agreement; and (c) take all such other actions as any of the responsible officers of such Reorganized Debtor may determine are necessary, appropriate or desirable in connection with the consummation of the transactions contemplated by the New Organizational Documents, the New Stockholders' Agreement, and the Warrant Agreement.  Notwithstanding anything to the contrary in this Confirmation Order or Article XI of the Plan, after the Effective Date, any disputes arising under the Exit Credit Facilities Documents, the New Organizational Documents, the New Stockholders' Agreement, and/or the Warrant Agreement will be governed by the jurisdictional provisions therein.

82.    **Compromise of Controversies.**  The entry of this Confirmation Order constitutes approval of all the compromises and settlements under Bankruptcy Rule 9019 of all Claims, Interests, and controversies resolved under the Plan.

83.    **Assumption of Contracts and Leases.**    On the Effective Date, each Executory

Contract and Unexpired Lease shall be deemed assumed, without the need for any further notice

to or action, order, or approval of the Court, under section 365 of the Bankruptcy Code and the

payment of Cures, if any, shall be paid in accordance with Section 5.2 of the Plan. The

assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment

of certain of such contracts to Affiliates.  Each assumed Executory Contract or Unexpired Lease

shall include all modifications, amendments, supplements, restatements, or other agreements

related thereto, and all rights related thereto, if any, including all easements, licenses, permits,

rights, privileges, immunities, options, rights of first refusal, and any other interests.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts

and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall

not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the

validity, priority, or amount of any Claims that may arise in connection therewith.  Assumption

of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full

payment of any applicable Cure pursuant to Section 5.2 of the Plan shall result in the full release

and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including

defaults of provisions restricting the change in control or ownership interest composition or other

bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease

at any time prior to the effective date of assumption.  Any and all Proofs of Claim based upon

Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases,

including pursuant to this Confirmation Order, and for which any Cure has been fully paid

pursuant to Section 5.2 of the Plan shall be deemed disallowed and expunged as of the Effective

Date without the need for any objection thereto or any further notice to or action, order, or approval of the Court.

84.     **SJP TS, LLC.**   Debtors Webcollage, Inc. ("***WCI***") and Answers Corporation ("***AC***"), on the one hand, and SJP TS, LLC ("***SJPTS***"), on the other hand, have consensually resolved the issues related to the assumption and assignment of that certain Lease, dated as of June 30, 2014, between SJPTS, as landlord, and AC, as tenant (the "***Lease***").  This resolution is embodied in that certain First Amendment to Lease between WCI and SJPTS, dated as of March 31, 2017 (together with all accompanying and/or related agreements, schedules, exhibits, attachments, documents referenced and/or incorporated therein and any other related documents, collectively, the "***Lease Amendment***"), which contemplates AC's assumption of the Lease, assignment of the Lease to WCI, and then a subsequent assignment of the Lease from WCI to SJPTS, and SJPTS has consented to such assignment.   Additionally, WCI will enter into a sublease with SJPTS (the "***Sublease***").  This Confirmation Order approves WCI's entry into the Sublease and the assignment of the Lease from WCI to SJPTS pursuant to section 365 of the Bankruptcy Code, subject to and conditioned upon the Debtors' agreement to timely comply with all of the obligations, terms, and conditions of the Lease (solely with respect to such obligations arising prior to April 1, 2017) and the Sublease and Lease Amendment.

85.     **Indemnification.**   On and as of the Effective Date, the Indemnification Provisions will be assumed and irrevocable and will survive the effectiveness of the Plan and notwithstanding anything in the Plan to the contrary, none of the Reorganized Debtors will amend and/or restate their respective governance documents before or after the Effective Date to terminate or adversely affect any of the Reorganized Debtors' obligations to provide indemnification rights consistent with the Indemnification Provisions.

86.     **Directors' and Officers' Liability Insurance.** As set forth in the Plan, on the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto, including all D&O Liability Insurance Policies (including tail coverage liability insurance). Notwithstanding anything to the contrary contained in the Plan, the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of insurance policies, including the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be filed, and shall survive the Effective Date.

87.     After the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce, modify or restrict in any way, the coverage under any D&O Liability Insurance Policy (including such tail coverage liability insurance) in effect as of the Effective Date, and all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date of the Plan shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such current and former members, managers, directors, and/or officers remain in such positions after the Effective Date of the Plan.

88.     **Authorization to Consummate.** The Debtors are authorized to consummate the Plan after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to Consummation set forth in Article IX of the Plan.

89.     **Professional Compensation.** All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than 45 days after the Effective Date. The Court shall determine the

Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and the Court. The Reorganized Debtors shall pay Professional Claims in Cash in the amount Allowed by the Court, including from the Professional Fee Escrow Account, which the Reorganized Debtors will establish and maintain in trust for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date. No funds in the Professional Fee Escrow Account shall be property of the Estates while held in such account. Any funds remaining in the Professional Fee Escrow Account after all Allowed Professional Claims have been paid will be turned over to the Reorganized Debtors. From and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

90.     **Release, Exculpation, Discharge, and Injunction Provisions.**  The release, exculpation, discharge, and injunction provisions set forth in Article VIII of the Plan are approved and authorized in their entirety, to the fullest extent allowed by applicable law, and such provisions are effective and binding on all parties and Entities to the extent provided therein and allowed by applicable law.

91.     **Compliance with Tax Requirements.**  In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized

39

Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including at the Debtors', Reorganized Debtors' and/or the Distribution Agent's option, liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes and withholding distributions pending receipt of information necessary to facilitate such distributions.    The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

92.    **Exemption from Transfer Taxes.**    To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan (including the Restructuring Transactions) or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors or the Reorganized Debtors; (b) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (c) the making, assignment, or recording of any lease or sublease; (d) the grant of collateral as security for any or all of the Exit Credit Facilities, as applicable; or (e) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan (including the Restructuring Transactions), shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or

40

recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

93.    **Documents, Mortgages, and Instruments.**  Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order.

94.    **Continued Effect of Stays and Injunction.**  Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or any order of the Court that is in existence on the Confirmation Date shall remain in full force and effect until the Effective Date.

95.    **Nonseverability of Plan Provisions Upon Confirmation.**  Each provision of the Plan is:  (a) valid and enforceable in accordance with its terms; (b) integral to the Plan and may be deleted or modified only prior to the Effective Date and with the Debtors' consent, consistent with the terms set forth in the Plan, the Plan Supplement and the Restructuring Support Agreement; and (c) nonseverable and mutually dependent.

41

96.     **Post-Confirmation Modifications.**   Without the need for further order or authorization of the Court, the Debtors are authorized and empowered, prior to the Effective Date, to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan (subject to any applicable consents or consultation rights set forth therein) and the Restructuring Support Agreement (subject to any applicable consents or consultation rights set forth therein).   Subject to the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions on modifications set forth in the Plan and the Restructuring Support Agreement, the Debtors expressly reserve their respective rights to revoke or withdraw, or to alter, amend, or modify materially the Plan, one or more times after Confirmation and prior to the Effective Date, and, to the extent necessary, may, prior to the Effective Date, initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of the Plan.   Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Section 10.1 of the Plan and subject to the terms of the Restructuring Support Agreement.

97.     **Applicable Nonbankruptcy Law.**   The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

98.     **Waiver of Filings.**   Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the

42

Court or the Office of the U.S. Trustee is permanently waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

99.    **Waiver of Section 341 Meeting of Creditors or Equity Holders**. Any requirement under section 341(e) for the U.S. Trustee to convene a meeting of creditors or equity holders is permanently waived as of the Confirmation Date.

100.    **Governmental Approvals Not Required.**    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state, federal, or other governmental authority with respect to the dissemination, implementation, or consummation of the Plan and the Disclosure Statement, any certifications, documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

101.    **Exemption from Registration Requirements.**    All shares of the New Common Stock and the Warrants issued pursuant to the terms of the Plan (including any other securities issuable upon the exercise of the Warrants) will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance on Section 1145(a) of the Bankruptcy Code.  The Exit Commitment Equity will be issued without registration under the Securities Act pursuant to an exemption from the registration requirements provided by 4(a)(2) of the Securities Act, and as a result, will be "restricted securities" within the meaning of Rule 144 promulgated under the Securities Act.

102.    Should the Reorganized Debtors elect on or after the Effective Date to reflect any ownership of the New Common Stock, including the Exit Commitment Equity, the MIP Equity (to the extent applicable) and/or the Warrants or the New Common Stock (or other securities issuable upon exercise of the Warrants) issued upon the exercise of the Warrants through the

facilities of the DTC, the Reorganized Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the New Common Stock (including the Exit Commitment Equity), the MIP Equity (to the extent applicable), and/or the Warrants or the New Common Stock (including any other securities issuable upon exercise of the Warrants) issued upon the exercise of the Warrants under applicable securities laws.

103.    Notwithstanding anything to the contrary in the Plan, no entity (including, for the avoidance of doubt, DTC) shall be entitled to require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Common Stock, including the Exit Commitment Equity, and the Warrants and the shares of the New Common Stock (including any other securities issuable upon exercise of the Warrants) issued upon the exercise of the Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services. DTC shall be required to accept and conclusively rely upon the Plan or Confirmation Order in lieu of a legal opinion regarding whether the New Common Stock, including the Exit Commitment Equity, and/or the Warrants and/or shares of the New Common Stock (including any other securities issuable upon exercise of Warrants) issued upon the exercise of the Warrants are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

104.    **Notices of Confirmation and Effective Date.**  The Reorganized Debtors shall serve a notice of the entry of this Order and the occurrence of the Effective Date, substantially in the form attached to this Confirmation Order as **Exhibit A** (the "*Effective Date Order Notice*"), in accordance with Bankruptcy Rules 2002 and 3020(c) on all holders of Claims and Interests and the Core Notice Parties within three (3) Business Days after the date of the occurrence of the Effective Date.  Notwithstanding the above, no notice of Confirmation or Consummation or

service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  As soon as practicable after entry of this Confirmation Order, the Debtors shall make copies of this Confirmation Order available on their reorganization website at www.omnimgt.com/Answers.  Service of the Effective Date Notice as provided herein shall constitute good and sufficient notice pursuant to Bankruptcy Rules 2002 and 3020(e) of entry of this Confirmation Order and the occurrence of the Effective Date and no other or further notice need be given.

105.    **Post-Effective Date Notices**.  Except as otherwise may be provided in the Plan or in this Confirmation Order, the only parties entitled to notice of any pleadings Filed in the Chapter 11 Cases of the Debtors after the Effective Date shall be:  (a) the Reorganized Debtors and their counsel, (b) the United States Trustee, (c) counsel to the Ad Hoc First Lien Group, (d) counsel to the Ad Hoc Second Lien Group, and (e) any party known to be directly affected by the relief sought in a given pleading.

106.    **Failure of Consummation.**  If the Effective Date does not occur, then: (a) the Plan will be null and void in all respects, and (b) nothing contained in the Plan, the Disclosure Statement, or the Restructuring Support Agreement shall: (i) constitute a waiver or release of any Claims, Interests, or Causes of Action by an Entity; (ii) prejudice in any manner the rights of any Debtor or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity.

107.    **Termination of the Restructuring Support Agreement.**  On the Effective Date, the Restructuring Support Agreement will terminate in accordance with Section 12(c) thereof.

108.    **Substantial Consummation.**  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

109.    **Waiver of Stay.**  The Debtors' request for a waiver of the stay of this Confirmation Order imposed by Bankruptcy Rule 3020(e) is hereby granted, and this Confirmation Order shall be effective and enforceable immediately upon its entry.

110.    **References to and Omissions of Plan Provisions.**  References to articles, sections, and provisions of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The failure to specifically include or to refer to any particular article, section, or provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the intent of the Court that the Plan be confirmed in its entirety, except as expressly modified herein, and incorporated herein by this reference.

111.    **Headings.**  Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

112.    **Effect of Conflict.**  This Confirmation Order supersedes any Court order issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.  If there is any inconsistency between the terms of the Plan or any Definitive Documents or other documents, schedules or exhibits contained in the Plan Supplement, on the one hand, and this Confirmation Order, on the other hand, this Confirmation Order shall control.

113.    **Termination of Challenge Period.** Notwithstanding paragraph 106, the Challenge Period (as defined in the Interim DIP Order and the Final DIP Order) is terminated as

of the date hereof, and the stipulations, admissions, findings, and release contained in the Interim

DIP Order and the Final DIP Order shall be binding on the Debtors' estates and all parties in

interest.

114.    **Final Order.**  This Confirmation Order is a final order and the period in which an

appeal must be filed shall commence upon the entry of this Confirmation Order.

115.    **Retention of Jurisdiction.**    Notwithstanding the entry of this Confirmation

Order, from and after the Effective Date, this Court shall, to the fullest extent legally permissible,

retain exclusive jurisdiction over the Chapter 11 Cases and all matters arising under, arising out

of, or related to, the Chapter 11 Cases, including all matters listed in Article XI of the Plan, as

well as for the purposes set forth in section 1142 of the Bankruptcy Code.  To the extent it is not

legally permissible for the Court to have exclusive jurisdiction over any of the foregoing matters,

the Court shall have non-exclusive jurisdiction over such matters to the fullest extent legally

permissible.    Notwithstanding anything to the contrary in this Confirmation Order or the Plan,

from and after the Effective Date, the Court shall not retain jurisdiction over the Exit Credit

Facilities or the documents executed in connection therewith or any liens, rights, or remedies

related thereto, the New Organizational Documents, the New Stockholders' Agreement, and the

Warrant Agreement except to the extent that this Confirmation Order has been vacated or

reversed, but instead, such enforcement shall be governed as set forth in the applicable Exit

Credit Facilities Documents, the New Organizational Documents, the New Stockholders'

Agreement, and the Warrant Agreement, as applicable.


New York, New York                           _____
Dated: April __, 2017                              UNITED STATES BANKRUPTCY JUDGE


47

**<u>Exhibit A</u>**

**Proposed Confirmation Order Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ANSWERS HOLDINGS, INC., *et al.*,[1] | ) Case No. 17-10496 (SMB) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**NOTICE OF (I) ENTRY OF ORDER APPROVING DISCLOSURE
STATEMENT FOR AND CONFIRMING DEBTORS' JOINT PREPACKAGED
CHAPTER 11 PLAN AND (II) OCCURRENCE OF EFFECTIVE DATE**

**PLEASE TAKE NOTICE** that on April __, 2017, the Honorable Stuart M. Bernstein, United States Bankruptcy Judge for the United States Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***"), entered the *Order Approving the Debtors' Disclosure Statement for, and Confirming, the Debtors' Joint Prepackaged Chapter 11 Plan* [Docket No. [__] (the "***Confirmation Order***") confirming the *Joint Prepackaged Chapter 11 Plan of Reorganization for Answers Holdings, Inc. and Its Debtor Affiliates* (as modified, amended, and including all supplements, the "***Plan***")[2] [Docket No. 17] and approving the Disclosure Statement [Docket No. 16] of the above-captioned debtors (the "***Debtors***").

**PLEASE TAKE FURTHER NOTICE** that the Effective Date of the Plan occurred on **April [__], 2017**.

**PLEASE TAKE FURTHER NOTICE** that the Confirmation Order and the Plan are available for inspection.  If you would like to obtain a copy of the Confirmation Order or the Plan, you may contact Rust Consulting/Omni Bankruptcy, the notice, claims, and solicitations agent retained by the Debtors in the Chapter 11 Cases, by:  (a) calling the Debtors' restructuring hotline at (800) 580-9044; or (b) visiting the Debtors' restructuring website at: www.omnimgt.com/Answers.  You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at:  www.pacer.gov.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court has approved certain discharge, release, exculpation, injunction, and related provisions in Article VIII of the Plan.

---

[1]     The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Answers Holdings, Inc. (4504); Answers Corporation (2855); Easy2 Technologies, Inc. (2839); ForeSee Results, Inc. (3125); ForeSee Session Replay, Inc. (2593); More Corn, LLC (6193); Multiply Media, LLC (8974); Redcan, LLC (7344); RSR Acquisition, LLC (2256); Upbolt, LLC (2839); and Webcollage Inc. (7771).  The location of Debtor Webcollage Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is:  11 Times Square, 11th Floor, New York, New York 10018.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Article V of the Plan, all requests for payment of Cure that differ from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be filed with the Bankruptcy Court on or before 30 days after the Effective Date.  Any such request that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that in the event that the rejection of an Executory Contract or Unexpired Lease by any of the Debtors results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors or their respective properties or interests in property as agents, successors, or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtors and the Reorganized Debtors no later than thirty (30) days after the later of (i) the Effective Date or (ii) the effective date of the rejection of such Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Section 2.1 of the Plan, unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtors, or the Reorganized Debtors, as applicable, each holder of an Allowed Administrative Claim (other than holders of Professional Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (a) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the holders of such Allowed Administrative Claim; (d) at such time and upon such terms as may be agreed upon by such holder and the Debtors or the Reorganized Debtors, as applicable; or (e) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on the Debtors, the Reorganized Debtors, the Distribution Agent, and any holder of a Claim or an Interest and such holder's respective successors and assigns, whether or not the Claim or the Interest of such holder is Impaired under the Plan, and whether or not such holder voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and the Confirmation Order contain other provisions that may affect your rights.  You are encouraged to review the Plan and the Confirmation Order in their entirety.

New York, New York                  /s/
Dated:  April __, 2017              James H.M. Sprayregen, P.C.
                                    Jonathan S. Henes, P.C.
                                    Christopher T. Greco
                                    Anthony R. Grossi
                                    John T. Weber
                                    **KIRKLAND & ELLIS LLP**
                                    **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                    601 Lexington Avenue
                                    New York, New York 10022
                                    Telephone:    (212) 446-4800
                                    Facsimile:    (212) 446-4900

                                         - and -

                                    Melissa N. Koss
                                    **KIRKLAND & ELLIS LLP**
                                    **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                    555 California Street
                                    San Francisco, California 94104
                                    Telephone:    (415) 439-1400
                                    Facsimile:    (415) 439-1500

                                    *Proposed Counsel to the Debtors*
                                    *and Debtors in Possession*

51